UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:                                                              Chapter 7

      USA UNITED FLEET, INC., *a/k/a*                  Case No.: 1-11-45867-ess
      SHORELINE FLEET, INC., *et al*.,                 (Jointly Administered)

                  Debtors.
---------------------------------------------------------------x
RICHARD J. MCCORD, ESQ., as Chapter 7 Trustee
for the Estate of USA UNITED FLEET, INC., *et al*.,

                Plaintiff,                 Adv. Pro. No.: 1-13-01219-ess

   -against-

ALLY FINANCIAL, INC., *f/k/a* GMAC
PITTSBURGH *f/k/a* GMAC,

                Defendant.
---------------------------------------------------------------x


**MEMORANDUM DECISION ON CHAPTER 7 TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Appearances:

Richard J. McCord, Esq.                          Michael T. Conway, Esq.
Certilman Balin Adler & Hyman, LLP               Shipman & Goodwin LLP
90 Merrick Avenue                                400 Park Avenue, 5th Floor
East Meadow, NY 11554                            New York, NY 10022

*Attorneys for Richard J. McCord,*               *Attorneys for Ally Financial, Inc.*
*as Trustee for the Estate of*
*U.S.A. United Fleet, Inc.*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

More than five years ago, on July 6, 2011, USA United Fleet, Inc. and several affiliated companies filed for protection under Chapter 11 of the Bankruptcy Code. These companies were in the business of providing bus transportation to children with special needs attending New York City public schools. Soon after the petition date, it became clear that the Debtors' business activities were tainted by many problems, including gross mismanagement, fiduciary failings, and the inability successfully to reorganize, and some three weeks later, on July 29, 2011, these cases were converted to cases under Chapter 7 of the Bankruptcy Code. The Court found that there was a compelling need for disinterested stewardship, and a Chapter 7 Trustee, Richard McCord, was appointed to administer the Debtors' estates.

This adversary proceeding was commenced by the Trustee some two years later, on June 17, 2013, against Ally Financial, Inc. ("Ally"). By this action, the Trustee seeks to recover several transfers allegedly made by or on behalf of USA United Fleet, Inc. or its affiliates ("USA United" or the "Debtors") to Ally.

As the record makes clear, the transfers at issue may be viewed in two distinct categories, and raise two distinct sets of issues. The first set of transfers that the Trustee seeks to recover are twenty-two payments in the aggregate amount of $29,423.73, made between June 17, 2008 and August 26, 2010, from several debtor entities to Ally in connection with a vehicle purchase financed by Ally (the "Car Payment Transfers"). The second transfer that the Trustee seeks to recover is a single wire transfer in the amount of $1,311,000 made on May 31, 2011 from the debtor Shoreline Merge, Inc. ("Shoreline Merge") to Ally (the "May 2011 Transfer" and together with the Car Payment Transfers, the "Transfers").

The Trustee seeks to avoid and recover these Transfers for the benefit of the Chapter 7 estate under New York's Debtor and Creditor Law ("NY DCL") Sections 273, 274, 275 and 276, and Bankruptcy Code Sections 544, 547, 548, 550 and 551. If the Trustee prevails under NY DCL Section 276, he also seeks attorneys' fees under NY DCL Section 276-a. The Trustee also seeks to recover the Transfers under common law principles of unjust enrichment. And the Trustee seeks to disallow any claim that Ally has filed or may file against the estate under Bankruptcy Code Section 502(d), to the extent that Ally has not paid the amount of the Transfers that are recoverable under Bankruptcy Code Section 550 or avoidable under Bankruptcy Code Sections 544, 547, and 548.

Before the Court are the Trustee's motion for summary judgment and Ally's cross-motion for partial summary judgment. The Trustee seeks summary judgment against Ally on each of the ten claims asserted in the Complaint, on grounds that there is no genuine dispute as to a material fact as to each element of these claims and that as a result, he is entitled to the entry of judgment and recovery of the Transfers as a matter of law.

Ally opposes summary judgment, and seeks partial summary judgment against the Trustee with respect to each of the claims that seeks recovery of the May 2011 Transfer on grounds, among others, that the funds that were transferred were never USA United's property. Ally also argues that there are genuine disputes as to material facts with respect to the Trustee's claims to recover the Car Payment Transfers, and requests additional discovery and a trial on those claims. And finally, if the Court denies Ally's Cross-Motion for summary judgment with respect to the May 2011 Transfer or grants summary judgment to the Trustee with respect to the Car Payment Transfers, Ally requests permission to file a third-party complaint against the parties involved in, and who benefitted from, these transfers.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b), and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c), because the parties have stated their consent to this Court entering a final judgment.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding.").

## Background

The USA United bankruptcy cases have an extensive history in this Court, and some background information is helpful to understanding the context of this adversary proceeding and these summary judgment motions.  The following procedural history is drawn from the extensive summary judgment record and the Court's docket.

### A.    The USA United Bankruptcy Cases

On July 6, 2011, USA United Fleet, Inc., USA United Holdings Inc., United Fleet, Inc., United Tom Tom Transportation Inc., USA United Bus Express Inc., USA United Transit Inc., Tom Tom Escorts Only, Inc., and Shoreline Transit Inc. filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  On July 29, 2011, the Court converted each of the USA United Debtors' Chapter 11 cases to cases under Chapter 7, and Mr. McCord was appointed as interim Chapter 7 Trustee.

On August 11, 2011, just over a month after the USA United bankruptcy cases were filed

3

and two weeks after they were converted to cases under Chapter 11, several additional entities –

Northeast Transit, Inc., Northeast Buses, Inc., and Northern Transit, Inc. (the "Northeast

Debtors") – filed voluntary Chapter 7 bankruptcy cases.  On October 28, 2011, the Court ordered

the USA United Debtors' and Northeast Debtors' cases to be jointly administered.  And finally,

on June 6, 2013, Trinity Account Management, Inc. ("Trinity") was substantively consolidated

with the Chapter 7 case of Shoreline Transit Inc., one of the USA United Debtors, effective as of

July 6, 2011.

**B.    This Adversary Proceeding**

On June 17, 2013, the Trustee commenced this adversary proceeding against Ally by

filing a complaint.

The Trustee alleges that before these bankruptcy cases were filed, the USA United

Debtors were experiencing liquidity shortfalls and owed significant amounts in unpaid federal

and state income and other taxes to the Internal Revenue Service and the New York State

Department of Taxation and Finance.  The Trustee also alleges that during this same period, and

during the time when each of the transfers at issue was made, the Debtors could not pay their

debts as they came due, and were either insolvent at the time of these transfers or rendered

insolvent as a result of the transfers.

*The Transfers at Issue*

The Trustee alleges that on or about May 31, 2011, within 90 days of the USA United

petition date of July 6, 2011, the Debtors caused the transfer by check or wire transfer, to or for

the benefit of Ally, of funds in the aggregate amount of $1,311,000 – the May 2011 Transfer.

In addition, the Trustee alleges that between August 17, 2009 and May 31, 2011, within

two years of the USA United petition date, the Debtors caused the transfer by check, wire

4

transfer or electronic web payment, to or for the benefit of Ally, of funds in the aggregate

amount of $1,323,383.03 (the "Two-Year Transfers").  The Complaint states that these Two-

Year Transfers were made on account of debts or obligations owed by insiders of the Debtors,

including certain principals and employees of the Debtors and their family members, and

identified in the Complaint as Dana Pristavec, Dennis Scialpi, Thomas Scialpi, William Moran,

and Laraine Lia, also known as Laraine Castellano (the "Insiders"), and not on account of

obligations of the Debtors.

The Trustee also alleges that between June 17, 2008 and May 31, 2011, the Debtors or

the Insiders caused the transfer by check or electronic web payment, to or for the benefit of Ally,

of funds in the aggregate amount of $1,340,423.73.  Here again, the Complaint states that these

transfers were made on account of insider debts or obligations, and not on account of obligations

of the Debtors.

The total amount that the Trustee seeks to recover, comprised of the May 2011 Transfer

and the Car Payment Transfers, is $1,340,423.73.

And finally, the Trustee alleges that the each of the transfers to or for the benefit of Ally

that he seeks to recover was made without fair consideration, diminished the bankruptcy estates

which were created upon the filing of the Debtors' bankruptcy petitions, and conferred no benefit

upon the Debtors.

*The Claims for Relief*

In his First Claim for Relief, asserted under Bankruptcy Code Sections 547 and 550, the

Trustee alleges that to the extent that the May 2011 Transfer was made on account of an

antecedent debt owed by the Debtors to Ally, it constitutes an avoidable transfer and that the

Trustee may recover the amount of the transfer from Ally.  He seeks a judgment avoiding the

5

May 2011 Transfer and recovering from Ally the amount of that transfer, $1,311,000, plus interest.

In his Second Claim for Relief, asserted under Bankruptcy Code Sections 548(a)(1)(A) and 550, the Trustee alleges that the Two-Year Transfers were made with actual intent to hinder, delay, or defraud creditors, including the IRS and the New York State Department of Taxation. The Trustee seeks a judgment avoiding the Two-Year Transfers and recovering from Ally the amount of those transfers, $1,323,383.03, plus interest.

In his Third Claim for Relief, asserted under Bankruptcy Code Sections 548(a)(1)(B), 550, and 551, the Trustee alleges that the Two-Year Transfers are avoidable as constructively fraudulent.  The Trustee seeks a judgment avoiding the Two-Year Transfers and recovering from Ally the amount of those transfers, $1,323,383.03, plus interest.

In his Fourth Claim for Relief, asserted under Bankruptcy Code Sections 544(b), 550, and 551, and NY DCL Section 273, the Trustee alleges that the Transfers are avoidable as constructively fraudulent.  The Trustee seeks a judgment setting aside the Transfers and awarding the Trustee damages in the amount of those transfers, $1,340,423.73, plus interest.

In his Fifth Claim for Relief, asserted under Bankruptcy Code Sections 544(b), 550, and 551, and NY DCL Section 274, the Trustee alleges that the Transfers are avoidable as constructively fraudulent.  The Trustee seeks a judgment setting aside the Transfers and awarding the Trustee damages in the amount of those transfers, $1,340,423.73, plus interest.

In his Sixth Claim for Relief, asserted under Bankruptcy Code Sections 544(b), 550, and 551, and NY DCL Section 275, the Trustee alleges that the Transfers are avoidable as constructively fraudulent.  The Trustee seeks a judgment setting aside the Transfers and awarding the Trustee damages in the amount of those transfers, $1,340,423.73, plus interest.

6

In his Seventh Claim for Relief, asserted under Bankruptcy Code Sections 544(b), 550(a), and 551, and NY DCL Section 276, the Trustee alleges that the Transfers were made with actual intent to defraud the IRS and the New York State Department of Taxation. The Trustee seeks a judgment setting aside the Transfers and awarding the Trustee damages in the amount of those transfers, $1,340,423.73, plus interest.

In his Eighth Claim for Relief, asserted under Bankruptcy Code Sections 544(b) and 550, and NY DCL Section 276-a, the Trustee alleges that if the Court determines that he may avoid and recover the Transfers under NY DCL 276, then he is also entitled to an award of attorneys' fees and expenses under NY DCL Section 276-a. The Trustee seeks a judgment in the amount of the attorneys' fees and expenses that he has incurred in connection with this adversary proceeding.

In his Ninth Claim for Relief, asserted under common law principles of unjust enrichment, the Trustee alleges that Ally was unjustly enriched and may not in equity and good conscience retain the Transfers. The Trustee seeks a judgment that Ally is liable to the Trustee in an amount not less than the amount of the Transfers, $1,340,423.73, plus interest.

In his Tenth Claim for Relief, asserted under Bankruptcy Code Section 502(d), the Trustee alleges that that the Court should disallow any claim of Ally to the extent that the Transfers are recoverable under Bankruptcy Code Sections 542, 543, 550, or 553 or that Ally is a transferee of a transfer avoidable under Bankruptcy Code Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), unless Ally shall have paid the amount recoverable.

*The Progress of this Litigation*

As noted, the Trustee commenced this action on June 17, 2013, and on September 24, 2013, Ally answered the Complaint. Ally denies that it is liable to the Trustee for any of the

amounts that he seeks to recover, under any of the theories of liability that he has advanced. With respect to the May 2011 Transfer, Ally also states that the funds were never USA United's property, and therefore simply cannot be recovered by the Trustee.  Ally also asserts certain affirmative defenses, including that the Complaint does not state a claim upon which relief can be granted, and that the Trustee cannot establish the necessary elements of a claim to recover any of the Transfers either as a preference that favored Ally above other creditors, or as an actually or constructively fraudulent transfer.

On November 20, 2013, and from time to time thereafter, the Court held pretrial conferences in this action at which the Trustee and Ally, by counsel, appeared and were heard. The parties also engaged in discovery during this period, including document discovery, interrogatories, and depositions.  These motions for summary judgment followed.

*The Motions for Summary Judgment*

On July 16, 2014, the Trustee filed the Motion for Summary Judgment, supported by an affidavit, a statement of undisputed material facts pursuant to Local Bankruptcy Rule 7056-1, and a memorandum of law.

On September 17, 2014, Ally filed the Cross-Motion for Summary Judgment, together with an affirmation and memorandum of law in opposition to the Trustee's Motion for Summary Judgment, and a counterstatement of disputed material facts and objections to evidence pursuant to Local Bankruptcy Rule 7056-1.  On September 19, 2014, Ally filed an amended memorandum of law in opposition to the Trustee's Motion for Summary Judgment.

On October 23, 2014, the Trustee filed an affidavit in further support of his Motion for Summary Judgment and in opposition to the Cross-Motion.

On October 28, 2014, Ally filed a supplemental objection pursuant to Bankruptcy Rule

8

7056 and Federal Rule of Civil Procedure 56(c)(2).

After the submissions were complete, the Court held conferences on the motions for summary judgment at which the Trustee and Ally, by counsel, appeared and were heard. The Court heard argument from counsel and closed the record on these motions on October 8, 2015.

### C.    The Car Payment Transfers

The Trustee and Ally agree as to the following material facts with respect to the Car Payment Transfers. Between June 17, 2008 and August 26, 2010, some twenty-two transfers were made from certain of the Debtors to Ally in an amount totaling $29,423.73. Nine of these payments, totaling $12,383.03, were made in the two-year period preceding the filing of the USA United bankruptcy cases. As described by David Samuel Roskin, a senior analyst in the Ally workout department managing high-risk accounts, these payments were made for a vehicle purchase financed by Ally, and Ally's records "suggest that the vehicle was used by Kathleen Scialpi." Def.'s Opp. Mem. ¶ 26, ECF No. 26.

But the Trustee and Ally disagree as to a significant material fact related to the Car Payment Transfers – whether the Debtors received fair consideration for those payments to Ally, in the nature of, for example, an ownership interest in the vehicle, or proceeds from a sale of the vehicle when the Debtors' assets were sold in these bankruptcy cases.

### D.    The May 2011 Transfer

The Trustee and Ally similarly agree as to several material facts with respect to the May 2011 Transfer. They agree that on May 31, 2011, William Lia transferred $1,300,000 to an account at TD Bank in the name of Shoreline Merge, Inc. And that same day, an outgoing wire was sent from the Shoreline Merge account to Ally in the amount of $1,311,000 for the purpose of paying an obligation owed by Gemini Auto Group ("Gemini") to Ally for vehicles that were

sold out of trust by Gemini.

The Trustee and Ally also agree that a week later, on June 7, 2011 and June 8, 2011, pursuant to the Department of Education Contracts held by the Debtors, the sum of $4,357,589.04 was deposited into an account held by Trinity. And they agree that Mr. Lia was repaid on June 8, 2011 by a wire transfer from Trinity. The Trustee and Ally agree that, as Mr. Roskin testified, Ally did not have business dealings with Shoreline or any of the other Debtors, and Ally did not investigate why it received funds to satisfy Gemini's obligation from Shoreline Merge, and not Gemini.

The Trustee and Ally also agree as to several matters concerning Ally's business operations. Ally provides floor plan financing to vehicle dealerships to permit the dealerships to acquire inventory to sell to consumers. Ally also provides retail accommodations, so that if a dealership sells a car to a consumer, that dealership can place the retail contract with Ally. And Ally provides loans to dealerships for real estate, working capital, and revolving lines of credit.

The parties agree that if Ally provides financing for the acquisition of a vehicle, it pays the manufacturer directly, and the manufacturer then ships the vehicle to the dealership. Upon the sale of the vehicle, the dealership receives the proceeds of the sale from the buyer and then holds those proceeds for the benefit of Ally until they are remitted to Ally. If the dealer does not remit the sales proceeds to Ally, Ally sends a demand letter seeking payment and may install auditors at the dealership during working hours and take other steps to secure the remaining collateral while the issue is resolved. Ally maintains wholesale security agreements with each of the dealerships for which it provides financing.

And finally, the Trustee and Ally agree that at the time of the May 2011 Transfer, Ally had a business relationship with William Lia and provided retail accommodations for his

dealerships.

But here again, the Trustee and Ally disagree as to significant material facts related to the May 2011 Transfer – including the nature and purpose of the transfer and the other payments among Mr. Lia, the Debtors, and Ally, the intent of the parties making the transfers, at the times that the transfers occurred, and most important, whether the funds that Mr. Lia transferred to Shoreline Merge became USA United's property.

## The Applicable Law

**A.    The Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c), made applicable to this Adversary Proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering cross-motions for summary judgment, the Court must evaluate the merits of each motion independently of the other. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  "[C]ross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Pereira v. United States (In re Rodriguez)*, 50 B.R. 576, 579 (Bankr. E.D.N.Y. 1985) (citations and internal quotation marks omitted).

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed

by the court in the light most favorable to the party opposing the motion. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (holding that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."). Accordingly, the moving party must first demonstrate that there is no genuine dispute as to a material fact as to each element of its claim. If it does not, then summary judgment will be denied. *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd*, 375 F. App'x 73 (2d Cir. 2010) (holding that summary judgment should be denied where the moving party does not show that there is no genuine dispute of material fact with respect to each essential element of the claim).

Statements in the pleadings are not sufficient to meet this burden. *Silverman v. United Talmudical Academy Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011). Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings as the moment has arrived to 'put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)), *aff'd*, 370 F. App'x 197 (2d Cir. 2010), *cert. denied*, 540 U.S. 811 (2003). "Unsupported allegations in the pleadings thus cannot create a material issue of fact." *In re Eugenia VI Venture Holdings,* 649 F. Supp. 2d at 117 (citation omitted).

As part of the independent evaluation of cross-motions for summary judgment, the court "must draw all reasonable inferences against the party whose motion is under consideration." *Coach, Inc. v. Peters*, 386 F. Supp. 2d 495, 497 (S.D.N.Y. 2005). If the moving party meets this initial burden, "the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *In re Allou Distribs., Inc.*,

446 B.R. at 49.

But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine'" dispute as to a material fact for trial and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citation omitted). *See Anderson*, 477 U.S. at 249, 255 (observing that "if the evidence is merely colorable . . . or is not significantly probative . . . summary judgment will be granted").

Claims that sound in fraud raise additional considerations. "While the issue of fraudulent intent ordinarily cannot be resolved on summary judgment, it is also well-recognized that the summary judgment rule would be rendered sterile if the mere incantation of intent would operate as a talisman to defeat and otherwise valid motion." *In re Allou Distribs.*, 446 B.R. at 50 (citations and internal quotation marks omitted).

And lastly, the denial of summary judgment in the face of a genuine dispute as to a material fact does not amount to an endorsement of the defendant's position. *In re Allou Distribs.*, 446 B.R. at 50 (citing *Huff v. UARCO, Inc.*, 122 F.3d 374, 385-86 (7th Cir. 1997)). Rather, denial of summary judgment means only that the case should be heard by the trier of fact, and cannot be resolved as a matter of law.

**B.    The Trustee's First Claim:  Recovery of a Preferential Transfer Under Bankruptcy Code Section 547(b)**

By his First Claim, the Trustee alleges that that the May 2011 Transfer is avoidable under Bankruptcy Code Sections 547(b) and 550 to the extent the May 2011 Transfer was made on account of an antecedent debt owed by the Debtors to Ally, and that he may recover the amount

of that transfer from Ally.  In the Motion for Summary Judgment, he seeks a judgment avoiding

the May 2011 Transfer and recovering from Ally the amount of the May 2011 Transfer,

$1,311,000, plus interest.

As explained by the bankruptcy court in *Redmond v. Rainstorm, Inc.*, the "threshold

requirement" for claims to recover a transfer as a preferential or fraudulent transfer is that "the

property transferred must have belonged to the debtor."  *Redmond v. Rainstorm, Inc. (In re Lone

Star Pub Operations, LLC)*, 465 B.R. 212, 216 (Bankr. D. Kan. 2012).  As the court explained:

> Avoiding preferential and fraudulent transfers recovers property which would
> have been available for distribution to creditors but for the transfers.  If the
> debtor's estate is not diminished by the transfer because the debtor did not have
> an equitable interest in the property, the property is not recoverable under §§ 547
> and 548.

*In re Lone Star Pub Operations, LLC*, 465 B.R. at 216 (citing *Begier v. IRS*, 496 U.S. 53, 58-59

(1990)).

In addition, to avoid a transfer as preferential under Bankruptcy Code Section 547(b), the

Trustee must establish five elements.  The transfer must have been made:

(1)     to or for the benefit of a creditor;

(2)     for or on account of an antecedent debt owed by the debtor before such
        transfer was made;

(3)     while the debtor was insolvent;

(4)     on or within 90 days before the date of the filing of the petition; and

(5)     to enable the benefited creditor to receive more than the creditor would if
        the transfer had not been made.

*See* 11 U.S.C. § 547(b).

The burden of proof in a proof in a preference action is governed by Section 547(g),

which provides:

For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

11 U.S.C. § 547(g).

## C.     The Trustee's Second Claim:  Recovery of a Fraudulent Transfer for Actual Fraud Under Bankruptcy Code Section 548(a)(1)(A)

By his Second Claim, the Trustee alleges that that the Two-Year Transfers are avoidable under Bankruptcy Code Sections 548(a)(1)(A) and 550 to the extent that they were made with the actual intent to hinder, delay, or defraud creditors, including the IRS and the New York State Department of Taxation.  The Trustee seeks a judgment avoiding the Transfers and recovering from Ally the amount of the Transfers, $1,323,383.03, plus interest.

At the outset, "[t]he threshold requirement for [claims of preferential or fraudulent transfers] is the property transferred must have belonged to the debtor." *In re Lone Star Pub Operations, LLC*, 465 B.R. at 216.  That is, the debtor must have had an interest in the property alleged to be fraudulently transferred.

The Trustee must establish three elements to succeed on his claim to avoid a transfer as actually fraudulent under Bankruptcy Code Section 548(a)(1)(A).  These are "(i) the transfer of an interest of the debtor in property; (ii) made within two years before the debtor filed for bankruptcy; and (iii) done with 'actual intent to hinder, delay, or defraud' the debtor." *McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC)*, 439 B.R. 47, 68 (Bankr. S.D.N.Y. 2010) (quoting 11 U.S.C. § 548(a)(1)(A)).  And "[s]ummary judgment is appropriate if the Trustee offers evidence satisfying these elements, and [the defendant] fails to offer evidence demonstrating that a material issue of fact exists on any of these elements, or fails to offer evidence establishing any of its affirmative defenses." *In re 1031 Tax Grp., LLC*, 439 B.R. at 68.

15

The Trustee bears the burden to establish these elements by clear and convincing evidence. *Jacobs v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 661 (Bankr. E.D.N.Y. 2008); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 130 B.R. 170, 179 (Bankr. D. Vt. 1991).

Intent is a key consideration in a Section 548(a)(1)(A) claim. But for purposes of Bankruptcy Code Section 548(a)(1)(A), it is only the debtor's intent as transferor that is relevant. As one court noted, "it is the intent of the transferor and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance." *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005). *See Schneider v. Barnard*, 508 B.R. 533, 545-46 (E.D.N.Y. 2014) (same).

Actual fraudulent intent is rarely shown by direct evidence. As a consequence, courts look to the circumstances surrounding the transaction. As the Second Circuit has explained:

> Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on "badges of fraud" to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.

*Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (quoting *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)).

The presence of multiple badges of fraud supports the inference of an intent to defraud creditors. *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 405 (Bankr. S.D.N.Y. 2007). These badges of fraud include:

(1)     the lack or inadequacy of consideration;

(2)     the family, friendship or close associate relationship between the parties;

(3)     the retention of possession, benefit or use of the property in question;

16

(4)    the financial condition of the party sought to be charged both before and after the transaction in question;

(5)    the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)    the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

But the context matters too.  As one court has recently observed, "the existence of a badge of fraud should be considered in the context of the case and any probative evidence of innocent intent."  *Kramer v. Chin (In re Chin)*, 492 B.R. 117, 131 (Bankr. E.D.N.Y. 2013).

## D.    The Trustee's Third Claim:  Recovery of a Fraudulent Transfer for Constructive Fraud Under Bankruptcy Code Section 548(a)(1)(B)

By his Third Claim, the Trustee alleges that that the Two-Year Transfers are avoidable under Bankruptcy Code Sections 548(a)(1)(B), 550, and 551.  The Trustee seeks a judgment avoiding the Two-Year Transfers and recovering from Ally the amount of those transfers, $1,323,383.03, plus interest.

To avoid the Two-Year Transfers as constructively fraudulent under Bankruptcy Code Section 548(a)(1)(B), the Trustee must establish first, that the debtor received less than reasonably equivalent value in exchange for the transfer; and second, that an additional factor is present.  Here, the Trustee alleges that three of the alternatives available under Section 548(a)(1)(B)(ii) are present  – that the debtor:

(I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]

17

(III)    intended to incur, or believed that the debtor would incur, debts that would
        be beyond the debtor's ability to pay as such debts matured;

11 U.S.C. § 548(a)(1)(B).

Section 548(d)(2)(A) defines "value" as "property, or satisfaction or securing of a present

or antecedent debt of the debtor."  But the Bankruptcy Code does not define "reasonably

equivalent value."  "Rather, Congress left to the courts the task of setting forth the scope and

meaning of this term, and courts have rejected the application of any fixed mathematical formula

to determine reasonable equivalence."  *Official Comm. of Unsecured Creditors of Fedders N.*

*Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 546

(Bankr. D. Del. 2009).

The questions implicated by a Section 548(a)(1)(B) claim are fact-specific, and perfect

equivalence is not the standard.  As one court observed:

> The determination of whether the debtor received reasonably equivalent value for
> his interest requires the court to compare what was given with what was received.
> It is not necessary that there be "mathematical precision" or a "penny-for-penny"
> exchange in order to establish reasonably equivalent value.  The court must
> determine whether reasonably equivalent value was exchanged based on the facts
> and circumstances of each case.

*Pergament v. Reisner (In re Reisner)*, 357 B.R. 206, 211 (Bankr. E.D.N.Y. 2006) (quotation and

alterations omitted).

**E.    The Trustee's Fourth, Fifth, and Sixth Claims:  Recovery of a Fraudulent Transfer
        for Constructive Fraud Under New York Debtor and Creditor Law Sections 273,
        274, and 275**

By his Fourth, Fifth, and Sixth Claims, the Trustee alleges that that the Transfers are

avoidable under Bankruptcy Code Sections 544(b), 550, and 551, and NY DCL Sections 273,

274, and 275.  The Trustee seeks a judgment avoiding the Transfers and recovering from Ally

the amount of the Transfers, $1,340,423.73, plus interest.

Bankruptcy Code Section 544(b)(1) authorizes the Trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." The "applicable law" upon which the Trustee relies here is set forth in NY DCL Sections 273, 274, and 275.

Here again, "[t]he threshold requirement for [claims of preferential or fraudulent transfers] is the property transferred must have belonged to the debtor." *In re Lone Star Pub Operations, LLC*, 465 B.R. at 216. That is, the debtor must have had an interest in the property alleged to be fraudulently transferred.

At the outset, to avoid a transfer as constructively fraudulent under NY DCL 273, 274, and 275, the Trustee must establish the common element that the conveyance was not made for fair consideration. The Trustee must then establish an additional element to recover under each of NY DCL 273, 274, and 275.

To avoid a transfer as constructively fraudulent under NY DCL 273, the Trustee must show that the transfer was made "without 'fair consideration,' and . . . [when] the transferor is insolvent or will be rendered insolvent by the transfer in question." *In re Sharp Int'l Corp.*, 403 F.3d at 53.

To avoid a transfer as constructively fraudulent under NY DCL 274, the Trustee must similarly establish that the transfer was made "without 'fair consideration,'" and when "the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital." *Id*.

And finally, to avoid a transfer as constructively fraudulent under NY DCL 275, the Trustee must establish that the transfer was made "without 'fair consideration,'" and when "the

transferor believes that it will incur debt beyond its ability to pay." *In re Sharp Int'l Corp.*, 403 F.3d at 53.

*The Question of Fair Consideration*

Application of these elements requires an assessment of fair consideration. Under New York law, fair consideration is given for property when "in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied" or when "such property . . . is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property." NY DCL § 272.

For these purposes, "fair consideration has two components – the exchange of fair value and good faith – and both are required." *SEC v. Universal Express, Inc.*, 2008 WL 1944803, at *5 (S.D.N.Y. Apr. 30, 2008) (quoting *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 376-77 (S.D.N.Y. 2003)), *aff'd*, 99 Fed. App'x 274 (2d Cir. 2004). *See Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*, 404 B.R. 710, 716 (Bankr. E.D.N.Y. 2009) (same).

"[T]he recipient of the debtor's property provides fair consideration by either conveying property or discharging an antecedent debt, provided that such exchange is a 'fair equivalent' of the property received or discharged." *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 803 (quoting *In re Sharp Int'l Corp.*, 403 F.3d at 53 n.3). As courts have noted, "fair consideration" under the NY DCL and "reasonably equivalent value" under Bankruptcy Code Sections 548(a)(1)(B) and (C) "have the same fundamental meaning . . . [and] are interpreted similarly by the courts." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000) (citing cases), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001).

20

Where "a transferee has given equivalent value in exchange for the debtor's property," the Second Circuit has concluded that "the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995). *See* NY DCL § 278(1) (providing that "[w]here a conveyance . . . is fraudulent as to a creditor, such creditor" may set aside or disregard that conveyance against anyone "except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase.").

*The Question of Insolvency*

NY DCL Section 273 also requires an assessment of the question of the debtor's insolvency. NY DCL Section 271 states that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." And "[t]o establish that a person is or will be thereby rendered insolvent, a plaintiff does not need to adduce formal evidence such as testimony from bankruptcy proceedings or balance sheets to demonstrate a defendant's financial distress." *Ostashko v. Ostashko*, 2002 WL 32068357, at *25 (E.D.N.Y. Dec. 12, 2002) (quotation omitted), *aff'd*, 79 F. App'x 492 (2d Cir. 2003).

In addition, "[u]nder [NY] DCL § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration." *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000). As the Second Circuit observed more than eighty years ago:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

21

*Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934).

When the presumption of insolvency arises, the burden shifts to the transferee to come

forward with proof of the transferor's solvency.  *See Ackerman v. Ventimiglia (In re*

*Ventimiglia)*, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007).  When "the trustee meets his burden as to

lack of fair consideration . . . it is presumed that the transfer made the debtor insolvent."  *Geltzer*

*v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005).

**F.**    **The Trustee's Seventh Claim:  Recovery of a Fraudulent Transfer for Actual Fraud Under New York Debtor and Creditor Law Section 276**

By his Seventh Claim, the Trustee alleges that the Transfers are avoidable under

Bankruptcy Code Sections 544(b), 550, and 551, and NY DCL Section 276 to the extent that

they were made with the actual intent to hinder, delay, or defraud creditors, including the IRS

and the New York State Department of Taxation.  The Trustee seeks a judgment avoiding the

Transfers and recovering from Ally the amount of the Transfers, $1,340,423.73, plus interest.

Bankruptcy Code Section 544(b)(1) authorizes the Trustee to "avoid any transfer of an

interest of the debtor in property or any obligation incurred by the debtor that is voidable under

applicable law by a creditor holding an unsecured claim."  The "applicable law" upon which the

Trustee relies here is set forth in NY DCL Section 276.

Again, as Bankruptcy Code Section 544(b) makes plain, "[t]he threshold requirement for

[claims of preferential or fraudulent transfers] is the property transferred must have belonged to

the debtor."  *In re Lone Star Pub Operations, LLC*, 465 B.R. at 216.

NY DCL Section 276 provides that "[e]very conveyance made and every obligation

incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or

defraud either present or future creditors, is fraudulent as to both present and future creditors."

To avoid a transfer as actually fraudulent under this Section, the Trustee must establish three elements:

> The Trustee must establish that (1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud.

*Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004) (citing *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2000)). That is, as distinguished from his claims grounded in constructive fraud under NY DCL Sections 273, 274, and 275, this claim requires the Trustee to show that the Debtors had the actual intent to defraud.

NY DCL Section 276 "focuses on the 'actual intent' of the transacting parties . . . [and] . . . where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." *U.S. v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994). "The burden of proving actual intent is on the party seeking to set aside the conveyance" and "[s]uch intent must be demonstrated by clear and convincing evidence." *MFS/Sun Lift Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934 (S.D.N.Y. 1995). And "[i]t is the intent of the transferor and not that of the transferee that is dispositive." *Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (citing *In re HBE Leasing Corp.*, 61 F.3d at 1059 n.5). *See Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 38 (Bankr. E.D.N.Y. 2006) (same).

Courts recognize that the requisite intent may well arise from the totality of the circumstances, and at least one court has observed that "it is well accepted that intent to hinder or delay creditors is sufficient, and intent to defraud need not be proven." *In re MarketXT Holdings Corp.*, 376 B.R. at 403. And as the Supreme Court has noted:

> A conveyance is illegal if made with an intent to defraud the creditors of the grantor, but equally it is illegal if made with an intent to hinder and delay them. Many an embarrassed debtor holds the genuine belief that, if suits can be staved off for a season, he will weather a financial storm, and pay his debts in full. The belief even though well founded, does not clothe him with a privilege to build up obstructions that will hold his creditors at bay.

*Shapiro v. Wilgus*, 287 U.S. 348, 354 (1932).

As noted above, actual fraudulent intent is rarely shown by direct evidence. As a consequence, courts may consider certain "'badges of fraud' . . . [that is,] circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *In re Sharp Int'l Corp.*, 403 F.3d at 56 (quoting *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)). To be sure, these are matters to be weighed, not elements of a claim – but the presence of multiple badges of fraud lends support to the inference of an intent to defraud creditors, and "the existence of several badges of fraud can constitute clear and convincing evidence of actual intent." *In re MarketXT Holdings Corp.*, 376 B.R. at 405.

As also noted above, these badges of fraud include:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

*In re Kaiser*, 722 F.2d at 1582-83.

And here again, badges of fraud should be viewed in the context of all of the facts and circumstances, and "the existence of a badge of fraud should be considered in the context of the case and any probative evidence of innocent intent." *In re Chin*, 492 B.R. at 131.

**G.     The Trustee's Eighth Claim:  Attorneys' Fees Under NY DCL Section 276-a**

By his Eighth Claim, the Trustee seeks a judgment under NY DCL Section 276-a awarding attorneys' fees incurred in this action.

NY DCL Section 276-a states that a prevailing plaintiff may recover attorneys' fees in a claim under NY DCL Section 276 "to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud either present or future creditors."  NY DCL § 276-a.

Fee shifting under NY DCL Section 276-a is available only where the plaintiff has established each of the elements of a NY DCL Section 276 claim.  In addition, to recover attorneys' fees under this Section, the Second Circuit has found that there must be actual fraudulent intent on the part of *both* the transferor *and* the transferee.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).  The Second Circuit determined that to award attorneys under NY DCL 276-a, the court must find:

> [that] when a the conveyance is found to have been made by the debtor and *received by the transferee with actual intent*, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors . . . the court must make an explicit finding of actual intent to defraud; imputed fraud does not satisfy § 276-a.

*Carey*, 923 F.2d at 21 (quotation and citation omitted).  As one bankruptcy court observed, "not only must the transfer have been made by the debtors with actual intent to defraud, it must have been received by the defendants with actual intent to defraud the debtors's creditors as well." *Doyaga v. Roth (In re Handler)*, 386 B.R. 411, 427 (Bankr. E.D.N.Y. 2007).

**H.      The Trustee's Ninth Claim:  Unjust Enrichment**

By his Ninth Claim, the Trustee alleges that Ally's actions caused it to be unjustly enriched.  He seeks a judgment against Ally in the amount of $1,340,423.73, which is the sum of the May 2011 Transfer and the Car Payments.

To prevail on his claim for unjust enrichment under New York law, the Trustee must show three elements.  These are: that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005).  Or "[s]aid another way, the plaintiff must prove (i) defendant was enriched and (ii) such enrichment was unjust."  *In re Chin*, 492 B.R. at 125.  As one court noted, "[a]n unjust enrichment claim is rooted in 'the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'"  *Campione v. Campione*, 942 F. Supp. 2d 279, 283 (E.D.N.Y. 2013) (quoting *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337 (1916)).  As these elements make plain, here too the defendant must have been enriched *at the expense* of the plaintiff.

**I.      The Trustee's Tenth Claim:  Disallowance of Claims Under Bankruptcy Code Section 502(d)**

By his Tenth Claim, the Trustee alleges that, to the extent that Ally has not paid the amount of the Transfers that are recoverable under Bankruptcy Code Section 550 or avoidable under Bankruptcy Code Sections 544, 547, and 548, any claim that Ally has filed or may file in these bankruptcy cases should be disallowed under Bankruptcy Code Section 502(d).

Bankruptcy Code Section 502(d) states that in the appropriate circumstances, "the court shall disallow any claim of any entity from which property is recoverable under [certain

Bankruptcy Code sections] . . . or that is a transferee of a transfer avoidable under [certain Bankruptcy Code sections], unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable." 11 U.S.C. § 502(d).

To succeed on his Section 502(d) claim, the Trustee must establish two elements. These are first, that the Trustee must have successfully avoided a transfer; and second, that the transferee has not paid the amount as required. *See* 5 *Collier on Bankruptcy*, ¶ 502.05 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.). And of course, the defendant must have filed a proof of claim. As the Fifth Circuit has noted, "[t]he legislative history and policy behind Section 502(d) illustrates that the section is intended to have the coercive effect of ensuring compliance with judicial orders." *Campbell v. United States (In re Davis)*, 889 F.2d 658, 661 (5th Cir. 1989), *cert. denied*, 495 U.S. 933 (1990).

**J.      Ally's Cross-Motion: The "Mere Conduit" Defense**

In its Cross-Motion, Ally argues that summary judgment should be granted in its favor with respect to each of the Trustee's claims to recover the May 2011 Transfer. Ally seeks an order dismissing the Trustee's First through Seventh Claims to the extent that they seek to recover the May 2011 Transfer under Bankruptcy Code Sections 547, 548(a)(1)(A), and 548(a)(1)(B) and NY DCL Sections 273, 274, 275, and 276 because "Shoreline Merge never had an interest in the $1.3 million sent by William Lia to his niece . . . [and] Shoreline Merge was a mere conduit for these funds." Def.'s Opp. Mem. ¶ 31, ECF No. 26. Put another way, Ally argues that based on the "mere conduit" doctrine, the funds comprising the May 2011 Transfer were never the property of Shoreline Merge or the Debtors, and accordingly, those funds cannot be recovered by the Trustee as a preference or fraudulent transfer.

The mere conduit doctrine has been recognized and applied by many courts within and

27

outside the Second Circuit.  As this Court has noted, "the 'mere conduit' theory is based on the premise that the conduit did not have dominion or control over the transferred property and cannot or should not be deemed a 'transferee.'"  *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs., Inc.)*, 379 B.R. 5, 15 n.6 (Bankr. E.D.N.Y. 2007).  And as another bankruptcy court observed, "an initial transferee has dominion and control over the *res* of the initial transfer, whereas a conduit has but a fleeting possessory interest therein."  *Stratton Oakmont, Inc.*, 234 B.R. at 313.

In its simplest construction, the mere conduit doctrine "envisions that there are three relevant parties:  the transferor, the conduit, and a third party who receives the transferred funds from the conduit."  *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 15 (S.D.N.Y. 2007).  The doctrine often arises where a debtor transfers funds to an intermediate entity which then forwards the funds to a third party, and it may be invoked by the intermediate entity from which recovery of the transfer is sought.  And the entity asserting the defense often is a financial intermediary, such as a financial institution or broker, in the role of facilitating a payment from one entity (such as the debtor) to another (such as a creditor).  By asserting this doctrine as a defense to a preference or fraudulent transfer claim, the defendant states that recovery may not be had from it, because it "is not an initial transferee if it was a 'mere conduit' of the funds."  *In re Manhattan Inv. Fund Ltd.*, 397 B.R. at 15 (quoting *Hooker Atlanta Corp. v. Hooker (In re Hooker Invs., Inc.)*, 155 B.R. 332, 337 (Bankr. S.D.N.Y. 1993)).

In determining whether the mere conduit defense applies to defeat a claim, courts may consider a wide range of facts and circumstances relating to the transfers, the parties, and their relationships.  Courts also consider the function of the person or entity in the particular transaction, the type of transaction at issue, and the purpose of the transaction.

28

For example, in *Christy v. Alexander & Alexander of New York (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997), the Second Circuit observed that "[c]ertain bankruptcy courts have concluded that the owner of the first pair of hands to touch the property is the initial transferee" and then "[exercised] their equitable powers to excuse innocent and casual 'initial transferees' from responsibility" in actions to recover those funds. *In re Finley, Kumble*, 130 F.3d at 56. The Circuit declined to endorse that analysis, noting:

> Under this construction, every courier, every bank and every escrow agent may be subjected to a great and unimagined liability that is mitigated only by powers of equity. . . . The effect of such a principle would be to render every conduit vulnerable to nuisance suits and settlements. . . .
>
> Every Court of Appeals to consider this issue has squarely rejected a test that equates mere receipt with liability, declining to find "mere conduits" to be initial transferees . . .

*In re Finley, Kumble*, 130 F.3d at 56, 57. The Circuit adopted the "mere conduit" rule, and pointed to several examples where the facts and circumstances, including the relationships among the parties, the roles performed by the parties, the economic substance of the transactions, and the presence or absence of a benefit to the defendant, among other considerations, should be weighed in determining whether the defendant should be subjected to liability. *In re Finley, Kumble*, 130 F.3d at 57-59.

In *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir. 1987), the Eleventh Circuit observed that "[t]he presumption that the debtor controlled the payment is not similarly compelling where funds provided by a third party are transferred to a noncreditor." *In re Chase & Sanborn Corp.*, 813 F.2d at 1181. The court noted that the concern with fairness among creditors, which is the underpinning of a preference action, is not present where a debtor

makes a fraudulent transfer to a noncreditor, and that "[p]resuming control from the mere fact of

the transfer . . . begs the essential question . . . did the transfer diminish the assets of the debtor?"

*Id*. Noting the "danger that creditors could receive a windfall in the form of funds that simply

passed through the debtor's possession but in fact were not the property of the debtor," the court

concluded:

> [w]here a transfer to a noncreditor is challenged as fraudulent, more is necessary
> to establish the debtor's control over the funds than the simple fact that a third
> party placed the funds in an account of the debtor with no express restrictions on
> their use. In determining whether the debtor had control of funds transferred to a
> noncreditor, *the court must look beyond the particular transfers in question to the
> entire circumstance of the transaction.*

*In re Chase & Sanborn*, 813 F.2d at 1181-82 (emphasis added).

And in *A.W. Lawrence & Co. v. Burstein (In re A.W. Lawrence & Co.)*, 346 B.R. 51

(Bankr. N.D.N.Y. 2006), the bankruptcy court found that it was necessary to consider "the entire

circumstances of the transaction" to determine whether a payment in the form of a check payable

to the debtor and endorsed over to a third party could be recovered from the third party. The

court concluded that the funds were not property of the debtor, and so the payment to the third

party did not diminish funds to pay creditors. *In re A.W. Lawrence*, 346 B.R. at 59.

Courts have also found that in circumstances where the transactions at issue do not

involve parties that customarily act as financial intermediaries, the application of the mere

conduit test requires a particularly close look at the transactions and the parties involved, and the

defense known as the "earmarking doctrine" may be invoked. The defense of earmarking may

arise where a third party lends funds to the debtor to pay a particular creditor, and that creditor

later becomes a defendant in an avoidance action. In invoking the earmarking doctrine, the

creditor argues that the debtor was a mere conduit of the funds that were used to pay it, and that

those funds were earmarked for that purpose.

30

For example, in *Pioneer Commercial Funding Corp. v. Apple Bank for Savings (In re Pioneer Commercial Funding Corp.)*, 140 B.R. 951 (Bankr. S.D.N.Y. 1992), the bankruptcy court observed that "the key factor in applying the earmarking doctrine is the fact that 'the assets from the third party were never in the control of the debtor and therefore payment of these assets to a creditor in no way diminishes the debtor's estate.'" *In re Pioneer Commercial Funding Corp.*, 140 B.R. at 955-56 (*quoting Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1360 (5th Cir. 1986)). Here too, the court relied on the facts and circumstances of the parties' relationships and transactions, including the debtor's control over the third party's funds in the debtor's general operating account while acting as the creditor's financial intermediary, to conclude that the earmarking doctrine did not apply and the transaction, in substance, diminished the debtor's estate.

And in *Cadle Co. v. Mangan (In re Flanagan)*, 503 F.3d 171 (2d Cir. 2007), the Second Circuit noted that "[t]he proper application of the earmarking doctrine depends not on whether the debtor obtains possession of new loan funds, but instead on whether the debtor is obligated to use those funds to pay an antecedent debt." *In re Flanagan*, 503 F.3d at 185. *See Adams .v Anderson (In re Superior Stamp & Coin Co.)*, 223 F.3d 1004, 1008 (9th Cir. 2000) (stating that the earmarking doctrine applies when a debtor receives funds from a third party lender for the purpose of paying a particular creditor).

## K.    Ally's Request for Leave To File a Third-Party Complaint

Finally, Ally requests permission to file a third-party complaint against the parties involved in, and who benefitted from, these Transfers, including Dana Pristavec, William Lia, and Kathleen Scialpi, if the Court denies its Cross-Motion for summary judgment with respect to the May 2011 Transfer or grants summary judgment to the Trustee with respect to the Car

Payment Transfers.

Federal Rule of Civil Procedure 14, made applicable here by Bankruptcy Rule 7014, sets forth the framework for commencing a third-party action.  Rule 14 provides that the court's permission is required if a defendant seeks to file a third-party complaint "more than 14 days after serving its original answer."  Fed. R. Civ. P. 14(a)(1).  As one court observed, "[t]he purpose of this rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate cause of action against a third-party for contribution."  *Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003).

In determining whether to grant leave to commence a third-party action, courts consider factors including:

(i)     Whether the movant deliberately delayed or was derelict in filing the motion;

(ii)    Whether impleading would unduly delay or complicate the trial;

(iii)   Whether impleading would prejudice the third-party defendant; and

(iv)    Whether the third-party complaint states a claim upon which relief can be granted.

*Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 240 (S.D.N.Y. 2004).

A motion for leave to file a third-party complaint "should be freely granted if [it] will not 'unduly complicate the trial, or would foster an obviously unmeritorious claim.'"  *Halperin v. MOR MGH Holdings, LLC (In re Green Field Energy Servs., Inc.)*, 2016 WL 3866273, at *1 (Bankr. D. Del. July 11, 2016) (quoting *Nova Prods., Inc.,* 220 F.R.D. at 240).  "The decision whether to permit a defendant to implead a third-party defendant rests in the trial court's

discretion." *Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2d Cir. 1984).

### Discussion

By his Motion for Summary Judgment, the Trustee seeks summary judgment on all ten of his claims in the Complaint. The Trustee seeks to avoid and recover the May 2011 Transfer for the benefit of the Chapter 7 estate under Bankruptcy Code Section 547, to avoid and recover the Two-Year Transfers under Bankruptcy Code Sections 548(a)(1)(A) and 548(a)(1)(B), to avoid and recover the Transfers under Bankruptcy Code Sections 544, 550, and 551 and NY DCL Sections 273, 274, 275, and 276 and an award of attorneys' fees under NY DCL Section 276-a, to recover the Transfers under common law principles of unjust enrichment, and to disallow any claim that Ally has filed or may file against the estate under Bankruptcy Code Section 502(d).

Ally opposes summary judgment, and by its Cross-Motion for Summary Judgment, seeks partial summary judgment on each of the claims that seeks recovery of the May 2011 Transfer on grounds, among others, that the $1.3 million that it received was never the Debtors' property in the first place. Ally also seeks denial of the Summary Judgment Motion with respect to the Trustee's claims to recover the Car Payment Transfers, and requests additional discovery and a trial on those claims.

### The Trustee's Claims To Recover the May 2011 Transfer

As described above, the Trustee seeks to recover two categories of transfers – the Car Payment Transfers and the May 2011 Transfer – and these raise two distinct sets of issues. Ally disputes that the May 2011 Transfer was a transfer of an interest of the Debtors in property, principally on grounds that the Debtor entity that made the transfer to Ally, Shoreline Merge, was a "mere conduit" for a payment by William Lia, on behalf of Dana Pristavec and Gemini, her dealership, to Ally for a past-due debt arising from Gemini's vehicles sales out of trust. As a

33

mere conduit, Ally urges, Shoreline Merge could not have transferred the Debtors' property, and each of the Trustee's claims to recover the May 2011 Transfer must fail. The Trustee and Ally each seek summary judgment in their favor on these claims, and at a minimum, Ally argues, the record shows that there is a genuine dispute of material fact as to whether the funds that it received in the May 2011 Transfer were an interest of the Debtors in property.

It is plain from even a cursory review of the Trustee's claims to recover the May 2011 Transfer that each of these claims is grounded in the assumption that the funds transferred to Ally were the Debtors' funds. Whether the claim seeks to recover a preference, an actually or constructively fraudulent conveyance, attorneys' fees incurred in recovering an actually fraudulent conveyance, the fruits of an unjust enrichment, or the disallowance of a claim, the starting point is the same: if the May 2011 Transfer was not made with an interest of the Debtors in property, then the claim cannot succeed.

As a result, if the Trustee has not established that there is no genuine dispute of material fact as to his assertion that the May 2011 Transfer was a transfer of an interest of the Debtors in property, then the Summary Judgment Motion with respect to the May 2011 Transfer must be denied. And similarly, if Ally has established that there is no genuine dispute of material fact that the May 2011 Transfer was *not* a transfer of the Debtors' property, then Ally's Cross-Motion for Summary Judgment with respect to the May 2011 Transfer must be granted. Accordingly, the Court considers first whether the Trustee has established this threshold matter – that the May 2011 Transfer was a transfer of an interest of the Debtors in property.

*Whether the Trustee Has Established that the May 2011 Transfer Was a Transfer of an Interest of the Debtors in Property*

The Trustee states that the May 2011 Transfer was made from the Shoreline Merge account maintained by the Debtors to Ally and that Ally acknowledges receipt of the May 2011 Transfer, and argues that this is sufficient to establish that the May 2011 Transfer was a transfer of an interest of the Debtors in property.

Ally responds that even though the May 2011 Transfer was made from an account in the name of one of the Debtors, "Shoreline Merge never had an interest in the $1.3 million sent by William Lia to his niece . . . [and] Shoreline Merge was a mere conduit for these funds." Def.'s Opp. Mem. ¶ 31, ECF No. 26.  It argues that "Shoreline Merge was never intended to have an interest in the Lia wire, but instead the ownership of these funds was vested in Dana Pristavec until the funds were paid over to AFI – Shoreline Merge was a mere conduit for this transfer." Def.'s Opp. Mem. ¶ 33, ECF No. 26.  And Ally states that the evidence, including Mr. Lia's deposition testimony, shows that Mr. Lia never made, or intended to make, a loan to Shoreline Merge.

Ally also argues that "at best, the Trustee could argue that a triable issue exists as to whether Shoreline Merge had an interest in the $1.3 million simply because it spent a matter of minutes in the Shoreline Merge account." Def.'s Opp. Mem. ¶ 35, ECF No. 26.  And finally, Ally states that the Court should not, as the Trustee requests, make a "finding based on form over substance" because, Ally argues, "substance matters." Def.'s Opp. Mem. ¶ 36, ECF No. 26.

The Trustee replies that the "question raised by Ally regarding whether [Mr.] Lia made a loan to the Debtors is a red herring, asserted solely for the purpose of enabling Ally to assert the defense that Shoreline Merge was a mere conduit for a loan from [Mr.] Lia to Dana Pristavec." Pls.' Resp. ¶ 14(a), ECF No. 29.  He states that Mr. Lia's testimony "expressly contradicts" this description of the transaction at issue, and notes that Mr. Lia testified that he "transferred

$1,300,000 to Shoreline Merge, at the request of his niece . . . on condition that she would repay it within a few days." Pls.' Resp. ¶¶ 14(a), 16(a), ECF No. 29.  He also states that Mr. Lia "did *not* testify that he made a loan to Dana Pristavec on May 31, 2011." Pls.' Resp. ¶ 16(b), ECF No. 29.  And the Trustee notes that on June 8, 2011, the "funds on deposit in the Trinity Depositary Account – derived from the DOE Contract Payments owed to the Debtors' bus transportation business – were used to repay the $1,300,000 that [Mr.] Lia had transferred to Shoreline Merge on May 31, 2011." Pls.' Resp. ¶ 16(d), ECF No. 29.

At oral argument, the Trustee further argued that it was "irrelevant" that the funds transferred by Mr. Lia to the Debtors were in the Shoreline Merge account for only a matter of minutes.  Tr. 8/18/15, 13:5-9, ECF No. 41.  He argued that in the minutes that the $1.3 million was in the Shoreline Merge account, the money "was under the complete control of the debtor and what they did with it was a classic fraudulent transfer."  Tr. 8/18/15, 13:9-11, ECF No. 41. The Trustee also argued that there was no "restriction" on the $1.3 million, and "no evidence" to suggest that Shoreline Merge was a "mere conduit" in this transaction.  Tr. 8/18/15, 14:4-6, ECF No. 41.

Also at oral argument, Ally disputed the Trustee's characterization of the facts.  Ally urged that Mr. Lia never intended to make a loan to Shoreline Merge, but instead intended to make a loan to his niece Ms. Pristavec, and that Shoreline Merge was "a conduit to pay for the auto dealership obligation."  Tr. 8/18/15, 20:22-24, ECF No. 41.  Ally noted that on May 27, 2011, one business day before Mr. Lia made the transfer, Ally demanded payment on the obligation from Gemini, and suggests that the May 2011 Transfer came about in response to that demand.  In substance, Ally argued that Mr. Lia lent the funds to Ms. Pristavec to permit her to pay an obligation that she and Gemini owed to Ally, and that Shoreline Merge served as a mere

36

conduit or vehicle for that payment.  Ally also argued that Shoreline Merge was a holding

company and the account was not operating.  And finally, Ally argued that the transactions from

Mr. Lia to Shoreline Merge and from Shoreline Merge to Ally had no effect on the Debtors, and

the subsequent transfer from Trinity to Mr. Lia should be viewed as a separate and unrelated

transaction that benefitted Ms. Pristavec, but not Ally.

Here, the parties agree and the record shows that on May 31, 2011, Mr. Lia sent by wire

transfer $1.3 million to the account of Shoreline Merge, and "[t]he *Shoreline Merge funds* were

delivered [to Ally] immediately after receipt of the same from [Mr. Lia]."  Pls.' Mot. Summ. J. ¶

11, ECF No. 15-2.  But the parties dispute the nature and the purpose of that transfer, and

whether the transferred funds were, as the Trustee sees it, the unrestricted property of the

Debtors or, as Ally urges, designated or "earmarked" for a particular purpose related to Ms.

Pristavec's business.

The record also shows that Mr. Lia testified at his deposition that he transferred these

funds because his niece "called me and she asked that she needed a loan for her car dealerships

or business, whatever she was doing, that she needed a loan."  Pls.' Supp. Aff. Ex. I (Lia

Deposition), ECF No. 27-9.  And Mr. Lia testified:

> She really didn't discuss too much.  "Uncle Bill, you got to help me out.  I need a
> loan.  And I'll give it back to you in a few days."
>
> And basically I says, "You gotta make sure you give it back to me."  I says, you
> know, I'm not used to – I'm not a bank.
>
> So – but it's my brother's child.  And I says, "Oh, all right, as long as you're
> going to give it back to me in a few days."

Pls.' Supp. Aff. Ex. I (Lia Deposition), ECF No. 27-9.

Mr. Lia also testified that he never made a loan to Shoreline Merge, stating "no, I have no idea what Shoreline Merge was.  The only reason, when I called my niece, she says, make this check out to, I assumed it was her company or something.  Her own company."  Pls.' Supp. Aff. Ex. I (Lia Deposition), ECF No. 27-9.

Notably, the Trustee did not challenge Mr. Lia's testimony or recollection, and did not ask any questions of Mr. Lia at his deposition.

The Trustee argues that the validity of his argument is confirmed by Mr. Lia's testimony – that is, that the $1.3 million transferred by Mr. Lia to Shoreline Merge was not designated or "earmarked" by Mr. Lia for any particular purpose.  And Ally argues that Mr. Lia's testimony confirms the validity of its position – that is, that the $1.3 million transfer was specifically intended or "earmarked" for use by Ms. Pristavec to pay a business debt, even if Mr. Lia was not aware of the particular circumstances of that debt.

As noted above, courts typically consider the mere conduit doctrine when a debtor transfers funds to an intermediary which then forwards the funds to a third party, and the intermediary asserts that as a mere conduit, it should not be liable in an action to recover the funds.  As the Second Circuit noted in adopting the mere conduit rule, "mere receipt" should not be equated with liability.  *In re Finley, Kumble,* 130 F.3d at 57.  Rather, the facts and circumstances of the transactions, including the relationships among the parties, the roles performed by the parties, the economic substance of the transactions, and the presence or absence of a benefit to the defendant, among other considerations, should be assessed in determining whether the defendant is liable.  *Id.*

Other courts agree that in assessing control over the funds at issue, "the court must look beyond the particular transfers in question to the entire circumstance of the transaction."  *In re*

38

*Chase & Sanborn*, 813 F.2d at 1181-82. And where the intermediary is not an entity that customarily acts as a financial intermediary, courts apply particular scrutiny to determine whether it is appropriate to conclude that the intermediary was merely a conduit between two other parties. *See In re Pioneer Commercial Funding*, 140 B.R. at 955-56 (applying earmarking doctrine to conclude that funds were never in the intermediary's control).

Here, the relationships of the parties are consistent with Ally's argument that Shoreline Merge was a mere conduit for the payment from Mr. Lia, on behalf of his niece Ms. Pristavec, to Ally. The family and business relationships among Mr. Lia, Ms. Pristavec, Gemini, and Ally are undisputed. And likewise, the absence of a business relationship between Shoreline Merge and Ally is undisputed. The record shows that Ally has raised, at a minimum, a genuine dispute of material fact as to whether the relationships of the parties support its mere conduit defense.

Also, the roles performed by the parties are consistent with Ally's argument that Shoreline Merge was a mere conduit for the May 2011 Transfer. The record indicates that Mr. Lia responded to a request from Ms. Pristavec, a family member, for a short-term loan to pay an urgent business debt of Gemini, her dealership, to Ally. Mr. Lia testified, "my niece called me and asked me to transfer money to her and [Shoreline Merge] was the address she gave me." Pls.' Supp. Aff. Ex. I (Lia Deposition), ECF No. 27-9.

The record also shows, and the parties do not dispute, that Shoreline Merge received a $1.3 million wire transfer from Mr. Lia and immediately made a wire transfer of $1,311,000 to Ally. It is similarly undisputed that Ally applied that sum to Gemini's obligation to it. Here again, the record shows that Ally has raised, at a minimum, a genuine dispute of material fact as to whether the roles performed by the parties support its mere conduit defense.

In addition, the economic substance of the transactions is consistent with Ally's argument that Shoreline was a mere conduit for the May 2011 Transfer.  The record indicates that the May 2011 Transfer came about when Mr. Lia agreed to make a short-term loan to his niece Ms. Pristavec to pay a business debt to Ally, and that the funds to make that payment flowed from Mr. Lia through Shoreline Merge to Ally.  The record also indicates that Ally had been pressing Ms. Pristavec and Gemini, her dealership, for payment shortly before those transfers were made.  And the record does not indicate that there was any independent business relationship between Mr. Lia and Shoreline Merge, or Shoreline Merge and Ally, to explain or provide context for the transfers.  That is, the record shows that Ally has raised, at a minimum, a genuine dispute of material fact as to whether the economic substance of the transactions support its mere conduit defense.

Lastly, the presence or absence of a benefit to the defendant is consistent with Ally's argument that Shoreline Merge was a mere conduit for the May 2011 Transfer, from two different perspectives.  In the typical assertion of the mere conduit defense, the defendant is the mere conduit – but that is not the only circumstance in which the doctrine may apply.  Here Ally argues that Shoreline Merge was in that role, and as a mere conduit, did not have control over the funds comprising the May 2011 Transfer sufficient for those funds to be viewed as the Debtors' property.  And in the transactions at issue in this action, Shoreline received $1.3 million from Mr. Lia and promptly forwarded those funds to Ally – so that Shoreline Merge, as a mere conduit, did not receive a benefit.

Alternatively, viewed from the perspective of Ally as the defendant, Ally received payment of a debt that it was owed by Gemini, which is not a debtor in the USA United bankruptcy cases.  So, while it received a benefit, it was not a benefit at the expense of a debtor

or other creditors in the USA United bankruptcy cases.  That is, the record shows that Ally has raised, at a minimum, a genuine dispute of material fact as to whether the presence or absence of a benefit to the defendant – whether Shoreline Merge as a mere conduit or Ally as the defendant here – supports its mere conduit defense.

In sum, the Trustee has not established that there is no genuine dispute of material fact as to the threshold element of each of his claims to recover the May 2011 Transfer, that it was the transfer of an interest of the Debtors in property.  For these reasons, and based on the entire record, the Trustee's Motion for Summary Judgment, to the extent that it seeks to recover the May 2011 Transfer, is denied.

At the same time, while Ally has argued persuasively that the Trustee has not established the absence of a genuine dispute of material fact with respect to whether the May 2011 Transfer was a transfer of an interest of the Debtors in property, that is not the same as meeting Ally's own burden on its Cross-Motion for Summary Judgment, to show that there is no genuine dispute of material fact that this transfer was *not* the transfer of an interest of the Debtors in property.

Here, the record shows that the facts of the transfers at issue are not in dispute.  But there remain genuine disputes of material fact as to whether the relationships of the parties, the roles performed by the parties, the economic substance of the transactions, and the presence or absence of a benefit to the defendant, taken together establish that the elements of Ally's mere conduit defense have been met.  That is, Ally has not established that there is no genuine dispute of material fact as to its defense to the Trustee's claims to recover the May 2011 Transfer, that it was not a transfer of an interest of the Debtors in property.  For these reasons, and based on the entire record, Ally's Cross-Motion for Partial Summary Judgment is denied.

**The Trustee's Claims To Recover the Car Payment Transfers**

The Trustee seeks to recover the Car Payment Transfers, as an actually or constructively fraudulent conveyance and the fruits of an unjust enrichment, and also seeks to recover his attorneys' fees and to disallow claims of Ally while those amounts remain unpaid. The Court considers the Trustee's Motion for Summary Judgment on each of these claims in turn.

**A.    Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Second Claim, To Recover the Two-Year Car Payment Transfers as Actually Fraudulent Transfers Under Bankruptcy Code Section 548(a)(1)(A)**

By his Second Claim, the Trustee seeks to avoid and recover the Two-Year Transfers under Bankruptcy Code Sections 548(a)(1)(A) and 550 on grounds that they were made with the actual intent to hinder, delay, or defraud creditors, including the IRS and the New York State Department of Taxation. In the Motion for Summary Judgment, he seeks a judgment avoiding and recovering the Two-Year Transfers in the amount of $1,323,383.03, plus interest. Nine of the Car Payment Transfers, totaling $12,383.03 and made between August 17, 2009 and August 26, 2010 (the "Two-Year Car Payment Transfers"), are included in this sum.

To prevail on this claim and avoid the Two-Year Car Payment Transfers as actually fraudulent, the Trustee must establish three elements. These are first, that the Two-Year Car Payment Transfers were transfers of an interest of the Debtors in property; second, that they were made within two years before the date of the filing of the petition; and third, that they were made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A).

The burden of proof to avoid an actually fraudulent transfer under Bankruptcy Code Section 548(a)(1)(A) is by clear and convincing evidence. *In re Jacobs*, 394 B.R. at 661. And to

prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of his claim.

### *Whether the Trustee Has Established that the Two-Year Car Payment Transfers Were a Transfer of an Interest of the Debtors in Property*

In the Complaint, the Trustee alleges that all of the Two-Year Transfers, including the Two-Year Car Payment Transfers, were made with debtor funds and constituted an interest of the Debtors in property. Specifically, the Trustee argues that the record shows that these payments were made by Shoreline Merge, Shoreline Transit, Inc., and Shoreline Pupil Transit, Inc., from their accounts at TD Bank, to Ally, that Ally acknowledged receipt of these payments, and that these were funds of the Debtors.

In response, Ally does not dispute that the Two-Year Car Payment Transfers were made from debtor entities, and similarly does not dispute that it received the funds from the Debtors.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the first element of his Section 548(a)(1)(A) claim, that the Two-Year Car Payment Transfers were transfers of an interest of the Debtors in property.

### *Whether the Trustee Has Established that the Two-Year Car Payment Transfers Were Made Within Two Years Before the Date of Filing of the Petition*

In the Complaint, the Trustee alleges that the Two-Year Transfers, including the Two-Year Car Payment Transfers, were made between August 17, 2009 and May 31, 2011, and that less than two years later, on July 6, 2011, the USA United bankruptcy cases were filed.

Ally does not dispute these matters, and concurs that these transfers were made within the two years preceding the petition date. Ally notes that the timing of these transfers was stipulated to at the deposition of Mr. Roskin, Ally's "designated person with knowledge." Def.'s Opp. Mem. ¶ 3, ECF No. 26.

43

Here, the parties agree and the record shows that the Two-Year Car Payment Transfers were made by the Debtors to Ally in the two years preceding the date that these bankruptcy cases were filed, on July 6, 2011.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the second element of his Section 548(a)(1)(A) claim, that the Two-Year Car Payment Transfers were made within two years before the date of the filing of the petition.

### *Whether the Trustee Has Established that the Two-Year Car Payment Transfers Were Made with Actual Intent To Hinder, Delay, or Defraud the Debtors' Creditors*

The Trustee alleges that the Two-Year Transfers, including the Two-Year Car Payment Transfers, were made with actual intent to hinder, delay, or defraud the Debtors' creditors, including the IRS and the New York State Department of Taxation. The Trustee points to several facts and circumstances surrounding these transfers, and argues that these "badges of fraud" point to the conclusion that the Two-Year Transfers were made with fraudulent intent.

Ally responds, in substance, that the Trustee has not come forward with evidence sufficient to meet the high standard necessary to establish fraudulent intent.

At the outset, it is worth noting that the barrier to establishing the absence of a genuine dispute of material fact with respect to fraudulent intent is high. And as many courts have noted, fraudulent intent is not often the subject of direct proof. The Second Circuit has identified common badges of fraud that supports the inference of an intent to hinder, delay, or defraud creditors. *In re MarketXT Holdings Corp.*, 376 B.R. at 405. As noted above, these include:

(1)    the lack or inadequacy of consideration;

(2)    the family, friendship or close associate relationship between the parties;

(3)    the retention of possession, benefit or use of the property in question;

44

(4)     the financial condition of the party sought to be charged both before and after the transaction in question;

(5)     the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)     the general chronology of the events and transactions under inquiry.

*In re Kaiser*, 722 F.2d at 1582-83.  "[T]he existence of several badges of fraud can constitute clear and convincing evidence of actual intent."  *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 809. At the same time, these need to be viewed "in the context of the case and any probative evidence of innocent intent."  *In re Chin*, 492 B.R. at 131.

Here, the Trustee relies on a number of these badges and Ally responds to them as follows:

The lack or inadequacy of consideration.  The Trustee argues that the Debtors "did not receive any benefit from Ally in exchange for the transfers."  Pl.'s Mem. 15, ECF No. 16.  As to the Car Payment Transfers, the Trustee argues that the Debtor did not own any vehicles other than school buses, and that the Car Payment Transfers may have provided a benefit to Thomas Scialpi, an Insider of the Debtors, and Kathleen Scialpi, his former spouse, but provided no benefit whatsoever to the Debtors.

In response, as to the Car Payment Transfers, Ally argues that the Trustee has not shown that there was an absence of fair consideration from Ally because it is possible that, for example, the vehicle at issue was owned by one of the Debtors and sold in connection with the Trustee's sale of the Debtors' businesses in these bankruptcy cases.

The family, friendship or close associate relationship between the parties.  The Trustee argues that the family and other relationships among the parties involved in the Two-Year

45

Transfers support the inference that those transfers were the product of fraudulent intent.  He also argues that the Two-Year Transfers were made to pay the debts and obligations of insiders, and not obligations of the Debtors.

As to the Car Payment Transfers, the Trustee argues that the relationship between Thomas Scialpi, an Insider, and Kathleen Scialpi, his former spouse and the beneficiary of the Car Payment Transfers, supports the inference that these payments were made with fraudulent intent.  In substance, the Trustee argues that Mr. Scialpi was using Debtor funds to pay his obligations to Ms. Scialpi.  More generally, the Trustee argues that the Two-Year Transfers were made on account of insider debts or obligations, and not on account of obligations of the Debtors.

Ally responds, in substance, that the Trustee's evidence falls short of the high standard required to show fraudulent intent.  Ally also argues that to the extent that the Trustee is successful in his claims to recover these transfers, it should be allowed to file a third-party complaint against the parties who benefitted from the transfers.

The existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors.  The Trustee argues that at the time that all the Transfers were made, including the Two-Year Car Payment Transfers, the Debtors could not pay their debts as they came due and were insolvent or rendered by the Transfers.  The Trustee also argues that at the time the Two-Year Transfers were made, "Comerica Bank, the holder of a first lien and security interest in all of the Debtors' assets, had commenced a prepetition action against the Debtors for various defaults under the loan documents and was seeking damages."  Pls.' Mem. 3-4, ECF No. 16. And the Trustee argues that the Debtors' Insiders transferred tens of millions of dollars to

46

relatives or entities owned or controlled by relatives of the Insiders for their personal use, and then had the relatives or entities owned or controlled by relatives re-transfer tens of millions of dollars back to the Debtors to cover expenses.

The Trustee also argues that during the time of the Two-Year Transfers, "the Debtors retained access to funds when they were required, under the Comerica Bank loan documents to produce financial statements to demonstrate their creditworthiness." Pls.' Mem. 15, ECF No. 16. And he argues that at the time of these transfers, the Debtors had incurred large tax debts to the IRS and the New York State Department of Taxation without the ability to repay them.

In response, and at the outset, Ally disputes that the Trustee has shown that the Debtors were insolvent or in financial difficulties at the time the Two-Year Transfers, including the Two-Year Car Payment Transfers, were made. Ally also argues that the Trustee is attempting to connect unrelated transactions and circumstances to these transfers, and states that the Trustee presents "a plethora of information . . . concerning the serious, but irrelevant defalcations of the owners of the Debtor companies with respect to completely unrelated transactions," and notes that the Trustee's arguments "suggest that there was a serious effort here to paint over the transfers at issue in this case with irrelevant and unrelated facts in the hope that these [Transfers] will likewise be viewed as bad acts." Def.'s Opp. Mem. ¶ 6, ECF No. 26. Ally states that the Trustee has not met his burden to show that any of the transfers to Ally from the Debtors "adversely affected any Debtor's financial condition or the ability to repay its other creditors." Def.'s Opp. Mem. ¶ 42, ECF No. 26.

The general chronology of the events and transactions under inquiry. The Trustee argues that the chronology of events and activities at the time of the Two-Year Car Payment Transfers, including the circumstances surrounding the May 2011 Transfer, demonstrates the Debtors'

47

fraudulent intent.  The Trustee argues that the Two-Year Car Payment Transfers were made

"from Debtor funds for an automobile owned and driven by Kathleen Scialpi, the former wife of

Thomas Scialpi, an insider of the Debtor[s]," during a period when he owed her unpaid domestic

support obligations.  Pls.' Supp. Mem. 5, ECF No. 30.  These circumstances, the Trustee argues,

viewed in light of the Debtors' many other defalcations, are sufficient to support an inference of

actual fraudulent intent.

Ally responds that the facts and circumstances of these transfers, including the May 2011

Transfer, do not support an inference of fraudulent intent, and also argues that the May 2011

Transfer had no effect on the Debtors.  Tr. 8/18/15, 20:22-24, ECF No. 41.

Here, with respect to the Two-Year Car Payment Transfers, consideration of these badges

of fraud in light of the entire record shows that the Trustee has not established the absence of a

genuine dispute of material fact as to whether the Debtors made those transfers with the actual

intent to hinder, delay, or defraud creditors.  The record shows that the Two-Year Car Payment

Transfers were made with the Debtors' funds and that no benefit was received by the Debtors in

return.  The record also shows that they were made by or on behalf of an Insider of the Debtors,

for the benefit of a family member of that Insider.  But the record does not show that the Two-

Year Car Payment Transfers were somehow part of a larger pattern or series of transactions or

course of conduct after the Debtors encountered financial difficulties, nor do they appear to be

part of a larger chronology of events and transactions evidencing the Debtors' fraudulent intent.

While it may be that these matters will be established at trial, the record does not support the

conclusion that the Two-Year Car Payment Transfers were the product of actual fraudulent

intent.

For these reasons, the Trustee has not established that there is no genuine dispute of material fact as to the third element of his Section 548(a)(1)(A) claim, that the Two-Year Car Payment Transfers were made with the actual intent to hinder, delay, or defraud creditors.

*        *        *

In sum, the Trustee has shown that there is no genuine dispute of material fact as to the first and second elements of his Second Claim, to recover the Two-Year Car Payment Transfers as actually fraudulent transfers under Bankruptcy Code Section 548(a)(1)(a).  But he has not shown that there is no genuine dispute of material fact as to the third element of this claim.  For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Second Claim, to the extent that it seeks to recover the Two-Year Car Payment Transfers, is denied.

**B.    Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Third Claim, To Recover the Two-Year Car Payment Transfers as Constructively Fraudulent Transfers Under Bankruptcy Code Section 548(a)(1)(B)**

By his Third Claim, the Trustee seeks to avoid and recover the Two-Year Transfers under Bankruptcy Code Sections 548(a)(1)(B), 550, and 551 on grounds that they were constructively fraudulent.  In the Motion for Summary Judgment, he seeks a judgment avoiding and recovering the Transfers in the amount of $1,323,383.03, plus interest.  As noted above, the Two-Year Car Payment Transfers, totaling $12,383.03 and made between August 17, 2009 and August 26, 2010, are included in this sum.

To prevail on this claim and avoid the Two-Year Car Payment Transfers as constructively fraudulent, the Trustee must establish four elements.  These are first, that the Two-Year Car Payment Transfers were transfers of an interest of the Debtors in property;

49

second, that they were made within two years before the date of the filing of the petition; and

third, that the debtor:

(i)    received less than a reasonably equivalent value in exchange for such
       transfer or obligation; and

(ii)

      (I)    was insolvent on the date that such transfer was made or such
            obligation was incurred, or became insolvent as a result of such
            transfer or obligation;

      (II)    was engaged in business or a transaction, or was about to engage in
            business or a transaction, for which any property remaining with
            the debtor was an unreasonably small capital; [or]

      (III)    intended to incur, or believed that the debtor would incur, debts
            that would be beyond the debtor's ability to pay as such debts
            matured;

. . . .

11 U.S.C. § 548(a)(1)(B).

Each of the elements to avoid a constructively fraudulent transfer under Bankruptcy Code

Section 548(a)(1)(A) must be shown by a preponderance of the evidence. *Schneider*, 508 B.R. at

548 (applying Bankruptcy Code § 548(a)(1)(B) and NY DCL §§ 272-75). And to prevail on

summary judgment, the Trustee must establish that there is no genuine dispute as to a material

fact with respect to each element of his claim.

*Whether the Trustee Has Established that the Two-Year Car Payment Transfers Were Transfers
of an Interest of the Debtors in Property*

As noted above, the parties agree and the record shows that the Two-Year Car Payment

Transfers were made from debtor entities, and that Ally received the funds from the Debtors.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the first element of his Section 548(a)(1)(B) claim, that the Two-Year Car Payment Transfers were transfers of an interest of the Debtors in property.

*Whether the Trustee Has Established that the Two-Year Car Payment Transfers Were Made Within Two Years Before the Date of Filing of the Petition*

As also noted above, the parties agree and the record shows that the Two-Year Car Payment Transfers were made between August 17, 2009 and May 31, 2011, and that less than two years later, on July 6, 2011, the USA United bankruptcy cases were filed.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the second element of his Section 548(a)(1)(B) claim, that the Two-Year Car Payment Transfers were made within two years before the date of filing of the petition.

*Whether the Trustee Has Established that the Two-Year Car Payment Transfers Were Made for Less than Fair Consideration or Reasonably Equivalent Value*

The Trustee argues that the Debtors received less than reasonably equivalent value in exchange for the Two-Year Car Payment Transfers.  He submits that the Debtors did not receive reasonably equivalent value for these transfers because, among other reasons, the Debtors did not own any vehicles other than school buses, and that those payments were directed by Mr. Scialpi, an Insider, to pay for a vehicle used by Ms. Scialpi.

In response, Ally argues that the Trustee has not established that the Two-Year Car Payment Transfers were made for less than fair consideration or reasonably equivalent value because, among other things, there is no testimony concerning the ultimate disposition of the vehicle.  Ally argues that the Trustee has not established that there was an absence of fair consideration from Ally when it is possible, for example, that the Debtors sold the vehicle at issue in connection with the Trustee's sale of the Debtors' businesses here.  Ally also argues that

51

the Trustee inappropriately supplemented the record with additional evidence in the form of an affidavit from the Trustee and the Declaration of M. Mark Lee (the "Lee Declaration").

Here, with respect to the Two-Year Car Payment Transfers, the record shows that the Trustee has established that the payments were made by the Debtors for the benefit of Mr. Scialpi and Ms. Scialpi.  While Ally has suggested some possible alternative circumstances that could be consistent with the conclusion that the Debtors received reasonably equivalent value for these transfers, including that the Debtors sold the vehicle at issue when the Debtors' assets were liquidated in these bankruptcy cases, Ally has not come forward with persuasive evidence sufficient to create a genuine dispute of material fact with respect to this matter.  The record of these bankruptcy cases does not indicate that a car, as opposed to a bus, was included among the assets that were sold by these Debtors here.  And Ally's own records are consistent with the Trustee's argument that Ms. Scialpi used the vehicle.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the third element of his Section 548(a)(1)(B) claim, that the Debtors did not receive fair consideration or reasonably equivalent value for the Two-Year Car Payment Transfers.

*Whether the Trustee Has Established that (i) the Debtors Were Insolvent when the Two-Year Car Payment Transfers Were Made or Were Rendered Insolvent by the Transfers, or (ii) the Debtors Were Engaged in or Were About To Engage in Business for Which Their Remaining Property Constituted an Unreasonably Small Capital, or (iii) the Debtors Intended or Believed that They Would Incur Debts Beyond Their Ability To Pay as They Matured*

The Trustee argues that he has established the fourth element of his Section 548(a)(1)(B) claim to recover the Two-Year Car Payment Transfers on each of three alternative grounds.  These are that the Debtors were insolvent or rendered insolvent when the transfers were made; that the Debtors were engaged or about to engage in business for which their remaining property

52

was an unreasonably small capital; or that the Debtors intended or believed they would incur

debts beyond their ability to pay as they matured.

　　As an initial matter, the Trustee argues that as shown by the solvency analysis prepared

by EisnerAmper LLP (the "EisnerAmper Solvency Analysis") and other evidence, the Debtors

were insolvent when these transfers were made.  The Trustee also argues that at the time of these

transfers, the Debtors and the Insiders were grossly mismanaging the Debtors' business

operations and funds, were not paying their debts as they came due including to the IRS and the

New York State Department of Taxation, and were defendants in litigation brought by the

Debtors' largest secured creditor, Comerica Bank.

　　In response, Ally argues that the Two-Year Car Payment Transfers are not avoidable

under Section 548(a)(1)(B) because they were not made while the Debtors were insolvent.  Ally

argues that the its solvency analysis, prepared by Tittle Advisory Group Inc. (the "TAG

Solvency Analysis") shows that the results of the EisnerAmper Solvency Analysis are "spurious

and unreliable," and that further work, analyses, and documents are required to determine the

Debtors' solvency.  Def.'s Opp. Mem. ¶ 50, ECF No. 26.  Ally also argues that the Trustee has

inappropriately supplemented the record with his affidavit and the Lee Declaration.  And as

noted above, Ally argues that the Trustee is attempting to connect unrelated transactions and

circumstances to these transfers, and the "serious, but irrelevant defalcations" of the Debtors'

Insiders to these matters.  Def.'s Opp. Mem. ¶ 6, ECF No. 26.

　　<u>Whether the Debtors Were Insolvent When the Two-Year Car Payment Transfers Were</u>
<u>Made or Were Rendered Insolvent by Those Transfers</u>  In the Complaint, the Trustee alleges that

"prior to the [petition date,] and at the time all prepetition transfers which are the subject of this

Complaint, the Debtors were insolvent or were rendered insolvent thereby."  Compl. ¶ 26, ECF

No. 1.  With respect to the Two-Year Car Payment Transfers, which comprise nine payments made by the Debtors to Ally between August 17, 2009 and August 26, 2010, the Trustee alleges that these were "made without fair consideration, diminished the bankruptcy estates . . . and conferred no benefit" on the Debtors.  Compl. ¶ 33, ECF No. 1.

In support of his argument, the Trustee relies upon the EisnerAmper Solvency Analysis, which includes, among other things, a series of "balance sheet tests" for the periods ending June 30, 2007, June 30, 2008, June 30, 2009, December 31, 2009, and December 31, 2010.  Pls.' Mot. Summ. J., ECF No. 15-13.  These documents state, among other things, that during these periods, the Debtors' liabilities exceeded their assets.

Ally disputes that the Debtors were insolvent when the Two-Year Car Payment Transfers were made.  Ally argues that the Trustee has not met his burden with respect to the Debtors' insolvency at the time that they made these transfers, and states that the Debtors "may have been solvent as of many of the relevant valuation dates" when they made those transfers.  Def.'s Opp. Mem. ¶ 52, ECF No. 26.

Ally also argues that according to a review prepared by its financial analyst, Tittle Advisory Group (the "TAG Solvency Analysis"), the Trustee's analysis is flawed for several reasons.  These include that the valuations in the EisnerAmper Solvency Analysis depend, among other things, upon certain Employee Stock Ownership Plan ("ESOP") valuations as of June 30, 2006, 2007, 2008, and 2009.  Ally argues that the TAG Solvency Analysis shows that the EisnerAmper Solvency Analysis should not be used to determine solvency because it is based on reports that were prepared for another purpose, and that the values used in the EisnerAmper Solvency Analysis significantly understate the real values of the employer securities included in the valuation.

54

And Ally argues that its solvency analysis raises questions as to certain adjustments made in the EisnerAmper Solvency Analysis, the use of certain documents to determine the going concern value of the Debtors, and the treatment of certain related party transactions.

The Trustee replies that the Lee Declaration effectively addresses each of the issues Ally raises with respect to the EisnerAmper Solvency Analysis, including that it does not encompass data after December 31, 2010, and that it relies on inappropriate data and therefore should not be a basis for a determination of the Debtors' solvency. The Trustee asserts that the Lee Declaration demonstrates that the issues raised by Ally's TAG Solvency Analysis are "primarily a collection of unsubstantiated arguments and speculative hypotheses that have little relevance to the determination of the Debtors' insolvency." Pls.' Resp. ¶ 11, ECF No. 28.

In an action to avoid and recover a constructively fraudulent transfer under Bankruptcy Code Section 548, the moving party must establish, among other things, that the debtor was "insolvent" when the transfer at issue was made. 11 U.S.C. § 548(a)(1)(B). The Bankruptcy Code defines insolvency as "the financial condition such that the sum of [a debtor's] debts is greater than all of [the debtor's] property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). "Solvency or insolvency is ordinarily a question of fact." *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 803 (citing *Lawson v. Ford Motor Co. (In re Roblin Indus.)*, 78 F.3d 30, 35 (2d Cir. 1996)).

Courts have acknowledged similarities with respect to the determination of insolvency between Bankruptcy Code Section 548(a)(1)(B) and New York's Debtor and Creditor Law. In *Tese-Milner v. Edidin and Assocs. (In re Operations NY LLC)*, 490 B.R. 84 (Bankr. S.D.N.Y. 2013), the bankruptcy court noted that under New York law, a "debtor who transfers property without fair consideration is presumed to be insolvent, and the burden shifts to the transferee to

rebut the presumption," and observed that this presumption "has been applied to constructive

fraudulent transfer litigation under 11 U.S.C. § 548." *In re Operations NY LLC*, 490 B.R. at 97.

But of course, the presumption of insolvency may be rebutted. To rebut this

presumption, the creditor must come forward with "proof of the transferor's solvency" at the

time that the transfer was made. *In re Jacobs*, 394 B.R. at 672.

Here, the Court has determined that the Car Payment Transfers were made for less than

fair consideration or reasonably equivalent value. As a result, the Trustee begins with the

presumption of insolvency, that is, that the Debtors were insolvent when they made the Car

Payment Transfers. And the Trustee has buttressed the presumption with evidence in the form of

the EisnerAmper Solvency Analysis and the Lee Declaration, which support the conclusion that

the Debtors were insolvent when they made the Car Payment Transfers. As a result, the burden

shifts to Ally to come forward with evidence "sufficient to create a genuine dispute as to a

material fact for trial" with respect to the Debtors' solvency at the time that the Car Payment

Transfers were made. *In re Allou Distribs., Inc.*, 446 B.R. at 49.

The record shows that Ally presented evidence, including the TAG Solvency Analysis,

which raises questions and proposes alternative scenarios concerning whether the Debtors were

solvent at the time of the Car Payment Transfers. Ally questions whether the EisnerAmper

Solvency Analysis used the correct values to determine the Debtors' solvency, at least to the

extent that it is based on valuations calculated for ESOP purposes, because of the "divergent

methodology between valuation for ESOP purposes and solvency." Def.'s Opp. Affirm. Ex. 9, ¶

24, ECF No. 24-2. Ally also notes that the TAG Solvency Analysis questions certain

adjustments made in the EisnerAmper Solvency Analysis, and the treatment of related party

transactions. Def.'s Opp. Affirm. Ex. 9, ¶¶ 24-29, ECF No. 24-2. And Ally points to the

statement of the Debtors' Comptroller, William Moran, that when the USA United bankruptcy cases were filed, "[n]otwithstanding these challenges, the Debtor[s] remained solvent and in business. Yet, even the most solvent of businesses has its breaking point." Def.'s Opp. Mem. ¶ 43, ECF No. 26.

But the record also shows that the nature of Ally's evidence is speculative with respect to the Debtors' solvency when they made the Car Payment Transfers. Ally's solvency expert questions the validity of the EisnerAmper Solvency Analysis, including the accuracy of certain ESOP valuations, the validity of adjustments made and documents used to determine going concern value, and the treatment of transactions with related parties. To the extent that Ally has identified questions, the Trustee has replied with answers, including in the Lee Declaration, that address the issues that Ally has raised. And the statement of the Debtors' Comptroller, Mr. Moran, must be viewed in light of his conflicting interests and testimony, and in all events, it is insufficient to overcome the balance of the Trustee's evidence. Taken as a whole, the questions identified by Ally with respect to the EisnerAmper Solvency Analysis are not sufficient to rebut the presumption of insolvency and the Trustee's evidence of insolvency. That is, the Trustee has established that there is no genuine dispute of material fact that, at the time of the Two-Year Car Payment Transfers, the Debtors were insolvent.

Whether the Debtors Were Engaged in Business or a Transaction for Which Any Property Remaining Was an Unreasonably Small Capital In the Complaint, the Trustee alleges that at the time of the Two-Year Car Payment Transfers, "the Debtors . . . were engaged in, or were about to engage in business or a transaction, for which any property remaining with the Debtors was unreasonably small capital." Compl. ¶ 52, ECF No. 1. The Trustee argues, in substance, that at the time of these transfers, the Debtors were engaged in numerous defalcations,

were indebted to the IRS and the New York State Department of Taxation, and were defendants in an action commenced by their largest secured creditor, Comerica Bank, for various defaults. The Trustee also argues that the Debtors' bankruptcy cases were converted from Chapter 11 to Chapter 7 as a result of their failure to disclose prepetition transfers, and more generally, their gross mismanagement of the Debtors' business operations.

In response, Ally argues that the Trustee has failed to show that the Two-Year Car Payment Transfers were improper and that the Motion for Summary Judgment contains irrelevant information concerning the defalcations and misconduct of the Debtors' Insiders and their relatives, but does not show that the Debtors were conducting their business with an unreasonably small capital.

Here, with respect to the Two-Year Car Payment Transfers, the record shows that the Trustee has not established the absence of a genuine dispute of material fact as to whether at the time of these transfers, the Debtors were engaged in business or a transaction for which their remaining property was an unreasonably small capital. To be sure, the record indicates that the Debtors' business operations were grossly mismanaged, and it may well be that the evidence at trial will support the conclusion that when each of the Two-Year Car Payment Transfers was made, the Debtors' remaining property was an unreasonably small capital. But at this stage in the proceedings, while that conclusion appears possible, it is not inevitable. That is, the Trustee has not established that there is no genuine dispute of material fact that, at the time of the Two-Year Car Payment Transfers, the Debtors were engaged in business or a transaction for which any property remaining was an unreasonably small capital.

<u>Whether the Debtors Intended or Believed that They Would Incur Debts Beyond Their Ability To Pay as They Matured</u>  In the Complaint, the Trustee alleges that when the Debtors

made the Transfers, they "intended . . . or believed that [they] would incur debts beyond [their] ability to pay as they matured."  Compl. ¶ 52, ECF No. 1.  Here too, the Trustee argues, in substance, that at the time of the Transfers, the Debtors owed significant amounts to the IRS and the New York State Department of Taxation, they were defendants in an action by its largest secured creditor, and the Debtors and Insiders were grossly mismanaging the Debtors' business operations and funds.  The Trustee states that the Court should infer from the Debtors' and Insiders' conduct that at the time of the Two-Year Car Payment Transfers, the Debtors intended or believed that they would incur debts beyond their ability to pay as they matured.

In response, and here as well, Ally argues that the Trustee has not shown that the Two-Year Car Payment Transfers were improper, and that the Debtors' and the Insiders' conduct is insufficient to show that when the Two-Year Car Payment Transfers were made, the Debtors intended or believed that they would incur debts beyond their ability to pay as they matured.

It is not easy to establish the intent of a party on a motion for summary judgment.  And while intent may be inferred, it should not be presumed.  Here, with respect to the Two-Year Car Payment Transfers, while the record shows that the Debtors were experiencing significant business difficulties over an extended period of time before these bankruptcy cases were commenced, the record does not establish that the Debtors intended or believed that they could not pay their bills.  That is, the Trustee has not established that, at the time of the Two-Year Car Payment Transfers, the Debtors intended or believed that they would incur debts beyond their ability to pay as they matured.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the fourth element of his Section 548(a)(1)(B) claim, on one of the alternative grounds, that the Debtors were insolvent when the Two-Year Car Payment Transfers were made.  And the

Trustee has not established that there is no genuine dispute of material fact with respect to two of the alternative grounds, that the Debtors were engaged in business or a transaction for which any remaining property was an unreasonably small capital, or that the Debtors intended or believed that they would incur debts beyond their ability to pay as they matured.

*               *               *

In sum, the Trustee has shown that there is no genuine dispute of material fact as to the first, second, third, and fourth elements of his Third Claim, to recover the Two-Year Car Payment Transfers as constructively fraudulent transfers under Bankruptcy Code Section 548(a)(1)(B).  For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Third Claim, to the extent that it seeks to recover the Two-Year Car Payment Transfers, is granted.

**C.      Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Fourth, Fifth, and Sixth Claims, To Recover the Car Payment Transfers as Constructively Fraudulent Transfers Under New York Debtor and Creditor Law Section 273, 274, and 275**

By his Fourth, Fifth, and Sixth Claims, the Trustee seeks to avoid and recover the Transfers under Bankruptcy Code Sections 544, 550, and 551 and NY DCL Sections 273, 274, and 275.  In the Motion for Summary Judgment, he seeks a judgment avoiding and recovering the Transfers in the amount of $1,340,423.73, plus interest.  The Car Payment Transfers, totaling $29,423.73 and made between June 17, 2008 and August 26, 2010, are included in this sum.

To avoid a transfer as constructively fraudulent under NY DCL 273, 274, and 275, the Trustee must establish the common element that the conveyance was not made for fair consideration.  The Trustee must then establish one more distinct element for NY DCL 273, 274, and 275 respectively.

To avoid a transfer as constructively fraudulent under NY DCL 273, the Trustee must establish two elements. The transfer must have been "made without 'fair consideration,' and . . . [when] the transferor is insolvent or will be rendered insolvent by the transfer in question." *In re Sharp Int'l Corp.*, 403 F.3d at 53.

To avoid a transfer as constructively fraudulent under NY DCL 274, the Trustee must establish two elements. The transfer must have been made "without 'fair consideration,' and . . . [when] the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital." *Id.*

And to avoid a transfer as constructively fraudulent under NY DCL 275, the Trustee must establish two elements. The transfer must have been made "without 'fair consideration,' and . . . [when] the transferor believes that it will incur debt beyond its ability to pay." *In re Sharp Int'l Corp.*, 403 F.3d at 53.

Each of the elements to avoid a constructively fraudulent transfer under NY DCL Sections 273, 274, and 275 must be shown by a preponderance of the evidence. *Schneider*, 508 B.R. at 548 (applying Bankruptcy Code § 548(a)(1)(B) and NY DCL §§ 272-75)). And to prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of his claim.

### *Whether the Trustee Has Established that the Car Payment Transfers Were Made for Less than Fair Consideration*

As with the Trustee's third claim, the Trustee argues that the Debtors received less than fair consideration in exchange for the Car Payment Transfers. He points to evidence showing that the Debtors did not own any vehicles other than school buses, and that those payments were directed by Mr. Scialpi, an Insider, to pay for a vehicle used by Ms. Scialpi.

61

In response, Ally argues that the Trustee has not shown that the Car Payment Transfers were made for less than fair consideration because, among other things, the record does not establish the ultimate disposition of the vehicle, including whether it was sold by the Debtors in these bankruptcy cases. And Ally also argues that the Trustee inappropriately supplemented the record with additional evidence including his affidavit and the Lee Declaration.

Here, as with the Trustee's Third Claim as to the Two-Year Car Payment Transfers, the record shows that the Trustee has established that the payments were made by the Debtors for the benefit of Mr. Scialpi and Ms. Scialpi. And similarly, while Ally has identified some alternative possibilities, it has not come forward with persuasive evidence sufficient to create a genuine dispute of material fact with respect to this matter.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the first element of his claims to recover the Car Payment Transfers as constructively fraudulent transfers under NY DCL Sections 273, 274, and 275, that the Debtors did not receive fair consideration for those transfers.

*Whether the Trustee Has Established that the Debtors Were Insolvent when the Car Payment Transfers Were Made or Were Rendered Insolvent by Those Transfers*

As noted above, in the Complaint, the Trustee alleges that "prior to the [petition date,] and at the time all prepetition transfers which are the subject of this Complaint, the Debtors were insolvent or were rendered insolvent thereby." Compl. ¶ 26, ECF No. 1. With respect to the Car Payment Transfers, which comprise twenty-two payments made by the Debtors to Ally between June 17, 2008 and August 26, 2010, the Trustee alleges that these were "made without fair consideration, diminished the bankruptcy estates, and conferred no benefit" on the Debtors. Compl. ¶ 33, ECF No. 1. The Trustee offers the EisnerAmper Solvency Analysis, which

includes, among other things, a series of balance sheet tests for the period from June 30, 2007 to December 31, 2010.  These documents state, among other things, that during these periods, the Debtors' liabilities exceeded their assets.

Ally disputes that the Debtors were insolvent when the Car Payment Transfers were made.  Ally questions the persuasiveness of the EisnerAmper Solvency Analysis, and offers its own analysis prepared by Tittle Advisory Group.  Ally urges that this report shows that the Trustee's solvency analysis is based on faulty and inaccurate assumptions, as well as inappropriate valuations of the Debtors' stock held in certain ESOPs.  Ally also questions certain adjustments and information used in that analysis, and the treatment of certain related party transactions.

The Trustee replies that the Lee Declaration responds to each of Ally's points.  The Trustee states that the issues identified by Ally with respect to the Debtors' solvency are, at most, "a collection of unsubstantiated arguments and speculative hypotheses that have little relevance to the determination of the Debtors' insolvency."  Pls.' Resp. ¶ 11, ECF No. 28.

As with Section 548(a)(1)(B), "[u]nder [NY] DCL § 273, there is a long-recognized presumption of insolvency where the debtor makes a conveyance without fair consideration."  *In re Manshul Constr. Corp.*, 2000 WL 1228866, at *53.  As the Second Circuit notes:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent.  We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

*Feist*, 70 F.2d at 334.  When this presumption arises, the burden shifts to the transferee to come forward with proof of the transferor's solvency.  *See In re Ventimiglia*, 362 B.R. at 83.  When

"the trustee meets his burden as to lack of fair consideration . . . it is presumed that the transfer made the debtor insolvent." *In re Borriello*, 329 B.R. at 373.

And as with the determination of insolvency in the context of a claim under Bankruptcy Code Section 548, the presumption of insolvency may be rebutted. To rebut this presumption, the creditor must come forward with "proof of the transferor's solvency" at the time that the transfer was made. *In re Jacobs*, 394 B.R. at 672 (citing *Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007)).

Here, the Court has determined that the Car Payment Transfers were made for less than fair consideration. As a result, here too, the Trustee begins with the presumption of insolvency, that is, that the Debtors were insolvent when they made the Car Payment Transfers. And here as well, the Trustee has buttressed the presumption with evidence in the form of the EisnerAmper Solvency Analysis and the Lee Declaration, which show that the Debtors were insolvent when they made the Car Payment Transfers. As a result, the burden shifts to Ally to come forward with evidence "sufficient to create a genuine dispute as to a material fact for trial" with respect to the Debtors' solvency at the time that the Car Payment Transfers were made. *In re Allou Distribs., Inc.*, 446 B.R. at 49.

The record shows that Ally presented evidence, including the TAG Solvency Analysis, which raises questions and proposes alternative scenarios concerning whether the Debtors were solvent at the time of the Car Payment Transfers. Ally questions whether the EisnerAmper Solvency Analysis used the correct values to determine the Debtors' solvency, at least to the extent that it is based on valuations calculated for ESOP purposes, because of the "divergent methodology between valuation for ESOP purposes and solvency." Def.'s Opp. Affirm. Ex. 9, ¶ 24, ECF No. 24-2.

But here again, there is a difference between identifying a possible question and establishing a genuine dispute as to a material fact. The nature of Ally's evidence is speculative with respect to the Debtors' solvency when they made the Car Payment Transfers. That is, as with the question of insolvency in the context of the Trustee's claim to recover the Two-Year Car Payment Transfers under Bankruptcy Code 548, the questions identified by Ally with respect to the EisnerAmper Solvency Analysis are not sufficient to rebut the presumption of insolvency and the Trustee's evidence of insolvency. That is, the Trustee has shown that the Debtors were insolvent at the time that they made the Car Payment Transfers.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the second element of his NY DCL Section 273 claim, that at the time of the Car Payment Transfers, the Debtors were insolvent.

*Whether the Trustee Has Established that the Debtors Were Engaged in Business for Which Their Remaining Property Was an Unreasonably Small Capital*

In the Complaint, the Trustee alleges that at the time of the Car Payment Transfers, "the Debtors . . . were engaged in a business for which the assets remaining in their hands represented an unreasonably small capital." Compl. ¶ 64, ECF No. 1. As with his Third Claim, the Trustee argues, in substance, that at the time of these transfers, the Debtors were engaged in numerous defalcations, were behind in their tax payments to the IRS and the New York State Department of Taxation, and had been sued by their largest secured creditor, Comerica Bank. He also points out that as a result of these and other problems with the Debtors' management of their business operations, the Debtors' bankruptcy cases were converted from Chapter 11 to Chapter 7.

In response, as with the Third Claim, Ally argues that the Trustee has not shown that the Car Payment Transfers were improper, and characterizes the facts cited by the Trustee as

65

unpersuasive and irrelevant to the question of whether the Debtors were conducting their business with an unreasonably small capital at the time these transfers occurred.

Here, with respect to the Car Payment Transfers, the record shows that the Trustee has not established the absence of a genuine dispute of material fact as to whether at the time of these transfers, the Debtors were engaged in business for which their remaining property was an unreasonably small capital.  As with the Trustee's Third Claim, the record shows significant problems with the Debtors' business operations, and here too, the evidence at trial may show that when each of the Car Payment Transfers was made, the Debtors' remaining property was an unreasonably small capital.  But at this stage in the proceedings, while that conclusion appears possible, it is not inevitable.

For these reasons, the Trustee has not established that there is no genuine dispute of material fact as to the second element of his NY DCL Section 274 claim, that the at the time of the Car Payment Transfers, the Debtors were engaged in business for which their remaining property was an unreasonably small capital.

### *Whether the Trustee Has Established that the Debtors Believed that They Would Incur Debt Beyond Their Ability To Pay*

In the Complaint, the Trustee alleges that at the time of the Car Payment Transfers, the Debtors "knew or should have known that they would incur debts beyond their ability to pay such debts as they matured."  Compl. ¶ 72, ECF No. 1.  As with his Third Claim, the Trustee argues, in substance, that at the time of these transfers, the Debtors were behind in their taxes and owed significant amounts to the IRS and the New York State Department of Taxation, they were defendants in an action by their largest secured creditor, and they were grossly mismanaging the Debtors' business operations and funds.  The Trustee asks the Court to infer from these

66

circumstances that when the Car Payment Transfers were made, the Debtors intended or believed that they would incur debts beyond their ability to pay.

In response, Ally argues that the Trustee has not shown that the Car Payment Transfers were improper, and that the Debtors' and the Insiders' conduct is insufficient to support the inference that at the time these payments were made, the Debtors believed that they would incur debt that they would not be able to pay.

As noted above, it is difficult to establish a party's intent on a motion for summary judgment. The record plainly shows that the Debtors were experiencing significant business difficulties over an extended period of time before these bankruptcy cases were commenced, but it does not establish that when the Car Payment Transfers were made, the Debtors believed that would incur debt that they could not pay. That is, the Trustee has not established the absence of a genuine dispute of material fact as to whether the Debtors believed that they would incur debts beyond their ability to pay when these transfers were made.

For these reasons, the Trustee has not established that there is no genuine dispute of material fact as to the second element of his NY DCL Section 275 claim, that the at the time of the Car Payment Transfers, the Debtors believed that they would incur debt beyond their ability to pay.

*         *         *

In sum, the Trustee has shown that there is no genuine dispute of material fact as to the first element of his Fourth, Fifth, and Sixth Claims, to recover the Car Payment Transfers as constructively fraudulent transfers under NY DCL 273, 274, and 275. And the Trustee has also shown that there is no genuine dispute of material fact as to the second element of his claim under NY DCL 273, that the Debtors were insolvent at the time the transfers were made. For

these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Fourth Claim, to the extent that it seeks to recover the Car Payment Transfers, is granted.

But the Trustee has not shown that there is no genuine dispute of material fact as to the second element of his claim under NY DCL 274, that the Debtors made the Car Payment Transfers when they were engaged in business for which their remaining property was unreasonably small capital. For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Fourth Claim, to the extent that it seeks to recover the Car Payment Transfers, is denied.

And the Trustee has not shown that there is no genuine dispute of material fact as to the second element of his claim under NY DCL 275, that the Debtors made the Car Payment Transfers when the Debtors believed that they would incur debt beyond their ability to pay. For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Fifth Claim, to the extent that it seeks to recover the Car Payment Transfers, is denied.

**D.    Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Seventh Claim, To Recover the Car Payment Transfers as Actually Fraudulent Transfers Under New York Debtor and Creditor Law Section 276**

By his Seventh Claim, the Trustee seeks to avoid and recover the Transfers under Bankruptcy Code Sections 544, 550, and 551, and NY DCL Section 276. In the Motion for Summary Judgment, he seeks a judgment avoiding and recovering the Transfers in the amount of $1,340,423.73, plus interest. The Car Payment Transfers, totaling $29,423.73 and made between June 17, 2008 and August 26, 2010, are included in this sum.

To avoid a transfer as actually fraudulent under NY DCL 276, the Trustee must establish three elements. One court has described these elements as follows:

> [T]he Trustee must establish that (1) the thing transferred has value out of which
> the creditor could have realized a portion of its claim; (2) that this thing was
> transferred or disposed of by debtor; and (3) that the transfer was done with actual
> intent to defraud.

*In re Flutie New York Corp.*, 310 B.R. at 56.  That is, as distinguished from his claims grounded

in constructive fraud under NY DCL Sections 273, 274, and 275, this claim requires the Trustee

to show that the Debtors had the actual intent to "actual intent . . . to hinder, delay, or defraud

either present or future creditors."  NY DCL § 276.

As with a claim under Bankruptcy Code Section 548(a)(1)(A), "the relevant intent may

be inferred from the facts and circumstances surrounding the transfer."  *In re Flutie New York*

*Corp.*, 310 B.R. at 56.  The Trustee must prove actual intent by clear and convincing evidence.

*In re Jacobs*, 394 B.R. 646, 658-59 (Bankr. E.D.N.Y. 2008).  In addition, "it is the intent of the

transferor and not that of the transferee that is dispositive."  *In re Jacobs,* 394 B.R. at 658

(internal quotations and citations omitted).  And to prevail on summary judgment, the Trustee

must establish that there is no genuine dispute as to a material fact with respect to each element

of his claim.

### *Whether the Trustee Has Established that the Car Payment Transfers Have Value from Which a Creditor Could Have Realized a Portion of its Claim*

In the Complaint, the Trustee alleges that the Car Payment Transfers were made with the

Debtors' funds, that those funds constituted an interest of the Debtors in property, and that those

funds could have been used to pay a portion of the claims of the IRS and the New York State

Department of Taxation.  Specifically, the Trustee argues that the record shows that these

payments were made by Shoreline Merge, Shoreline Transit, Inc., and Shoreline Pupil Transit,

Inc., from their accounts at TD Bank, to Ally, that Ally acknowledged receipt of these payments,

and that these were funds of the Debtors.

69

In response, Ally does not dispute that the Car Payment Transfers were made from debtor entities, and similarly does not dispute that it received the funds from the Debtors.

Here, the record shows that the funds used to make the Car Payment Transfers were the Debtors' funds.  And as the Debtors' funds, these sums have value from which a creditor could have been paid.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the first element of his NY DCL 276 claim, that the Car Payment Transfers have value from which a creditor could have realized a portion of its claim.

### *Whether the Trustee Has Established that the Car Payment Transfers Were Made by the Debtors*

In the Complaint, the Trustee alleges that the Car Payment Transfers were made by the Debtors with the Debtors' funds.  And as noted above, the Trustee argues that the record shows that these payments were made by Shoreline Merge, Shoreline Transit, Inc., and Shoreline Pupil Transit, Inc., from their accounts at TD Bank, to Ally, that Ally acknowledged receipt of these payments, and that these were funds of the Debtors.

In response, Ally does not dispute that the Car Payment Transfers were made from debtor entities, and similarly does not dispute that it received the funds from the Debtors.

For these reasons, the Trustee has established that there is no genuine dispute of material fact as to the second element of his NY DCL 276 claim, that the Car Payment Transfers were made by the Debtors.

### *Whether the Trustee Has Established that the Car Payment Transfers Were Made by the Debtors with the Actual Intent To Defraud*

The Trustee alleges that the Transfers, including the Car Payment Transfers, were made with actual intent to hinder, delay, or defraud the Debtors' creditors, including the IRS and the

New York State Department of Taxation.  As with the Two-Year Transfers, the Trustee points to several facts and circumstances surrounding these transfers, and argues that these "badges of fraud" point to the conclusion that the Car Payment Transfers were made with fraudulent intent.

Ally responds, in substance, that the Trustee has not come forward with evidence sufficient to meet the high standard necessary to establish fraudulent intent.

As noted above, the barrier to establishing the absence of a genuine dispute of material fact with respect to fraudulent intent is high, and persuasive direct proof is rare indeed.  Instead, courts look to several badges of fraud that have been identified by the Second Circuit, including:

(1)    the lack or inadequacy of consideration;

(2)    the family, friendship or close associate relationship between the parties;

(3)    the retention of possession, benefit or use of the property in question;

(4)    the financial condition of the party sought to be charged both before and after the transaction in question;

(5)    the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)    the general chronology of the events and transactions under inquiry.

*In re Kaiser*, 722 F.2d at 1582-83.  To be sure, these must be viewed in light of "any probative evidence of innocent intent."  *In re Chin*, 492 B.R. at 131.  But where they are present, courts may infer that the defendant acted with actual fraudulent intent.  *In re Actrade Fin. Techs. Ltd.*, 337 B.R. at 809.

Here, as with the Two-Year Car Payment Transfers, consideration of these badges of fraud in light of the entire record shows that the Trustee has not established the absence of a genuine dispute of material fact as to whether the Debtors made those transfers with the actual

intent to hinder, delay, or defraud creditors.  The record shows that the Car Payment Transfers were made with the Debtors' funds and that no benefit was received by the Debtors in return.  The record also shows that they were made by or on behalf of an Insider of the Debtors, for the benefit of a family member of that Insider.  But the record does not show that the Car Payment Transfers were somehow part of a larger pattern or series of transactions or course of conduct after the Debtors encountered financial difficulties, nor do they appear to be part of a larger chronology of events and transactions evidencing the Debtors' fraudulent intent.  While it may be that these matters will be established at trial, the record does not support the conclusion that the Car Payment Transfers were the product of actual fraudulent intent.

For these reasons, the Trustee has not established that there is no genuine dispute of material fact as to the third element of his NY DCL 276 claim, that the Car Payment Transfers were made with the actual intent to hinder, delay, or defraud creditors.

*       *       *

In sum, the Trustee has shown that there is no genuine dispute of material fact as to the first and second elements of his Seventh Claim, to recover the Car Payment Transfers as actually fraudulent transfers under NY DCL Section 276.  But he has not shown that there is no genuine dispute of material fact as to the third element of this claim.  For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Seventh Claim, to the extent that it seeks to recover the Car Payment Transfers, is denied.

**E.      Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Eighth Claim, To Recover Attorney's Fees Under NY DCL Section 276-a**

By his Eighth Claim, the Trustee seeks an award of attorney's fees under NY DCL Section 276-a.  This Section permits an award of fees to a successful plaintiff in an action under

NY DCL Section 276 "to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud either present or future creditors." NY DCL 276-a.

But not every successful plaintiff in a Section 276 action may recover its fees. As observed by the Second Circuit, an award of attorneys' fees under NY DCL 276-a must be based on a finding of actual fraudulent intent on the part of *both* the transferor *and* the transferee. The Second Circuit notes that before awarding attorneys' fees against a defendant, the court must make certain findings, including:

> [that] when a the conveyance is found to have been made by the debtor *and received by the transferee with actual intent*, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors . . . the court must make an explicit finding of actual intent to defraud; imputed fraud does not satisfy § 276-a.

*Carey*, 923 F.2d at 21 (quotation and citation omitted). That is, a finding of an intent to defraud on the part of the transferor alone, and not the transferee, is not sufficient, and fees may be awarded only where both parties to the transaction acted with actual fraudulent intent. And even more fundamentally, a claim for attorney's fees under NY DCL Section 276-a must be based on a successful claim to recover a fraudulent transfer under NY DCL Section 276.

Here, as set forth above, the Trustee has not established that he is entitled to summary judgment on the Seventh Claim, to recover the Car Payment Transfers as actually fraudulent transfers under NY DCL Section 276. For these same reasons, the Trustee has not established that there is no genuine dispute of material fact as to each element of his claim to recover attorney's fees under NY DCL 276-a. For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Eighth Claim is denied.

**F.**     **Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Ninth Claim, that Ally was Unjustly Enriched by the Transfers**

By his Ninth Claim, the Trustee seeks to recover the Transfers under the common law doctrine of unjust enrichment.  In the Motion for Summary Judgment, he seeks a judgment in the amount of $1,340,423.73, plus interest, which is the sum of the May 2011 Transfer and the Car Payment Transfers.

To prevail on his claim for unjust enrichment under New York law, the Trustee must show that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd.*, 373 F.3d at 306.  "Said another way, the plaintiff must prove (i) defendant was enriched and (ii) such enrichment was unjust." *In re Chin*, 492 B.R. at 125.  "An unjust enrichment claim is rooted in 'the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'" *Campione*, 942 F. Supp. 2d at 283 (quoting *Miller v. Schloss,* 218 N.Y. 400, 407 (1916)).  And to prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of his claim.

*Whether the Trustee Has Established that Ally Was Enriched at the Debtors' Expense by the Car Payment Transfers*

In the Complaint, the Trustee alleges that Ally was unjustly enriched in the amount of $1,340,423.73, including the Car Payment Transfers.  The Trustee also alleges that the Car Payment Transfers were made with debtor funds and constituted an interest of the Debtors in property.

As noted above, Ally does not dispute that the Two-Year Car Payment Transfers were made from debtor entities, and similarly does not dispute that it received the funds from the

Debtors.  Ally also notes that the timing of these transfers was stipulated to at the deposition of

Mr. Roskin, Ally's "designated person with knowledge."  Def.'s Opp. Mem. ¶ 3, ECF No. 26.

Here, the parties agree and the record shows that the Car Payment Transfers were made

by the Debtors to Ally before these bankruptcy cases were filed.  That is, they do not dispute that

Ally received these funds from the Debtors, or viewed another way, at the Debtors' expense.

For these reasons, the Trustee has established that there is no genuine dispute of material

fact as to the first element of his unjust enrichment claim, that Ally was enriched by the Car

Payment Transfers.  And the Trustee has also established that there is no genuine dispute of

material fact as to the second element of this claim, that Ally was enriched by the Car Payment

Transfers at the Debtors' expense.

### *Whether the Trustee Has Established that the Equity and Good Conscience Militate Against Permitting Ally To Retain the Car Payment Transfers*

In the Complaint, the Trustee alleges that the Transfers, including the Car Payment

Transfers, "were impermissible transfers of the Debtors' interest in property" to Ally, and that

Ally would be unjustly enriched if it retained those transfers.  Compl. ¶ 88, ECF No. 1.  And the

Trustee argues, in substance, that "the record of these cases is replete with incidents of Insiders

using Debtor Funds to pay their person expenses or the expenses of entities controlled by the

Insiders or their Relatives."  Pls.' Mem. 12, ECF No. 16.

In response, Ally argues, in substance, that the Trustee has failed to show that the Car

Payment Transfers were improper and that at best, relies on irrelevant information concerning

the defalcations and misconduct of the Debtors' Insiders and their relatives.

Here, the Trustee has not shown that the facts and circumstances of the Car Payment

Transfers permitted Ally to enrich itself unjustly at the Debtors' expense.  While the record

suggests that those payments may well have been for the benefit of Insiders of the Debtors, that would indicate that those Insiders – not Ally – benefited from this use of the Debtors' funds. Nor has the Trustee established any other grounds to conclude that equity and good conscience militate against permitting Ally to retain these transfers.

For these reasons, the Trustee has not established that there is no genuine dispute of material fact as to the third element of his unjust enrichment claim, that equity and good conscience militate against permitting Ally to retain the Car Payment Transfers.

*          *          *

In sum, the Trustee has shown that there is no genuine dispute of material fact as to the first and second elements of his Ninth Claim, to recover the Car Payment Transfers as unjust enrichment. But he has not shown that there is no genuine dispute of material fact as to the third element of this claim. For these reasons, and based on the entire record, the Trustee's motion for summary judgment on the Ninth Claim, to the extent that it seeks to recover the Car Payment Transfers, is denied.

**G.    Whether the Trustee Has Established that He Is Entitled to Summary Judgment on the Tenth Claim, that Ally's Claim Should Be Disallowed Under Bankruptcy Code Section 502(d)**

By his Tenth Claim, the Trustee seeks to disallow any claim that Ally has filed or may file against these Debtors' bankruptcy estates under Bankruptcy Code Section 502(d), to the extent that Ally has not paid the amount of the Transfers that are recoverable under Bankruptcy Code Section 550 or avoidable under Bankruptcy Code Sections 544, 547, and 548. In the Motion for Summary Judgment, he seeks a judgment disallowing any such claim.

Bankruptcy Code Section 502(d) provides that "the court shall disallow any claim of any entity from which property is recoverable" under selected Bankruptcy Code sections, including

Section 550, and similarly "shall disallow any claim of . . . a transferee of a transfer avoidable" under selected Bankruptcy Code sections, including Sections 547 and 548, "unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable." 11 U.S.C. § 502(d). That is, if a creditor seeks to recover on a proof of claim, it may not be paid until it has paid or turned over any assets of the debtor that are due. As a consequence, it is plain from the terms of Section 502(d) that the Trustee may seek relief against Ally on this claim only if Ally has filed a proof of claim.

Here, the parties agree and the record shows that Ally has not filed a proof of claim in these Debtors' bankruptcy cases. The bar date, February 29, 2012, passed more than four years ago, Ally is not a creditor, and Ally does not seek to recover from the estate.

In sum, the Trustee has not established that there is no genuine dispute of material fact as to the threshold element of his claim to disallow any claim filed by Ally under Bankruptcy Code Section 502(d), that Ally has filed a proof of claim. For these reasons, and based on the entire record, the Trustee's Motion for Summary Judgment on the Tenth Claim is denied.

## Ally's Request for Leave To File a Third-Party Complaint

Ally seeks permission pursuant to Rule 14 of the Federal Rules of Civil Procedure to file a third-party complaint against the parties involved in, and who benefitted from, these Transfers, including Dana Pristavec, William Lia, and Kathleen Scialpi, if the Court denies its Cross-Motion for summary judgment with respect to the May 2011 Transfer or grants summary judgment to the Trustee with respect to the Car Payment Transfers.

The Trustee does not specifically respond to this request for relief.

Rule 14, made applicable here by Bankruptcy Rule 7014, sets forth the framework for commencing a third-party action, and case law provides factors that a court considers when

addressing a request for permissive impleader.  Those factors include whether the movant deliberately delayed in seeking leave to bring a third-party action, whether allowing leave would unduly delay or complicate the trial or prejudice the third-party defendant, and whether the proposed third-party claim appears to state a claim upon which relief can be granted.  *Nova Prods., Inc.*, 220 F.R.D. at 240.

Here, the record shows that Ally is required to request leave in order to commence a third-party action, because Ally sought this relief long after fourteen days from the time it served its Answer.  The record also shows that Ally responded promptly to the Trustee's Motion for Summary Judgment with its own Cross-Motion and this request.  Impleading would neither unduly delay nor complicate the trial, because the proposed third-party defendants are either the Debtors' Insiders or their family members, and they have been involved in these proceedings for some time.  And for similar reasons, the record shows that impleading would not prejudice the proposed third-party defendants, based on their participation in these proceedings to date.  To be sure, the Court is not in a position to assess whether the proposed third-party complaint states a claim upon which relief can be granted.  But it appears from the record that there is a reasonable prospect that plausible claims can be stated.  Taken as a whole, these factors show that Ally has established that it should be permitted to file a third-party complaint against Dana Pristavec, William Lia, and Kathleen Scialpi.

For these reasons, and based on the entire record, Ally's request for leave to file a third-party complaint is granted.

### Conclusion

For the reasons stated herein, and based on the entire record, the Trustee's Motion for Summary Judgment with respect to the Third Claim, to the extent that it seeks to avoid and

recover the Two-Year Car Payment Transfers as constructively fraudulent transfers under Bankruptcy Code Section 548(a)(1)(B), is granted in part; and the Trustee's Motion for Summary Judgment with respect to the Fourth Claim, to the extent that it seeks to avoid and recover the Two-Year Car Payment Transfers as constructively fraudulent transfers under New York Debtor and Creditor Law Section 273, is granted in part. And also for the reasons stated herein, and based on the entire record, Ally's request for leave to file a third-party complaint is granted.

In all other respects, the Trustee's Motion for Summary Judgment, and Ally's Cross-Motion for Summary Judgment, are denied.

An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**September 26, 2016**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**

79